## STATE v. ALLEN.

1. PLEADING—FORGERY.—AN INDICTMENT charging the forging and uttering of a written instrument need not allege the act to have been done feloniously.

2. EVIDENCE—FORGERY.—In a prosecution for forging and uttering a forged instrument, it is proper to prove that defendant had in his possession, or had uttered other forged instruments of like kind, although not connected with the particular transaction, to prove guilty knowledge and intent. *State* v. *O'Dell*, 3 Brev., 552, *overruled.*

3. PLEADING—INDICTMENT—FORGERY.—PROOF · that a forged school claim drawn against a school district in D—— County was paid by the County Treasurer, is sufficient to support the allegation in the indictment that the forgery was done with intent to defraud the County of D——.

4. TEACHERS' PAY CERTIFICATE—EVIDENCE.—Original and duplicate teachers' pay certificates are both originals, and either may be intro- ·duced in evidence as an original.

5. EVIDENCE—HEARSAY.—Statements of party deceased at time of trial are hearsay, and not admissible as evidence.

Before TOWNSEND, J., Dorchester, May, 1899. Af- firmed.

Indictment against C. J. Allen for forgery. From sen- tence on verdict of guilty, defendant appeals.

*Messrs. Howell, Gruber & Rumph, Griffin & Padgett, D. H. Behre* and *T. R. Tighe,* for appellant. Mr. Gruber cites: *Indictment should have charged the act done feloniously or with felonious intent:* 5 Stat., 397; 11 Stat., 341; 8 Rich., 21; 5 Strob., 66; 2 Treadway, 759. *Evidence tending to show forgery and uttering other instruments improperly ad- mitted:* 2 Treadway, 758. Harper, 39, *has no application.* 1 Bail., 300; 2 Rich., 418, *not in conflict with our conten- tion.* 35 N. E. R., 145; 49 Mass.,235; 59 N. Y.,557; 84 N. Y., 480; 56 N. Y., 363. *Proof of drawing an instrument against a school district, will not support the allegation of intent to defraud the county:* Code, 295; art. VII., sec. 9, Con. 1895; Rev. Stat., 461; acts 1896, p. 162, sec. 31, and p. 160, sec. 28; 1 McM., 236. *There being a failure of tes- timony tending to show intent to defraud the county, the Judge should have directed verdict for defendant:* 54 S. C., 408; 21 S. C., 557; 13 S. C., 115; 13 S. C., 376.

*Solicitor Jervey, contra,* cites: *The word "felonious" not necessary in an indictment:* Crim. Code, 55, 295; 8 Rich., 17; 54 S. C., 300. *Evidence of other forged instruments of a similar nature competent:* Harp., 59; 1 Bail., 300; 2

Rich., 418. *Signature may be proved by party purporting to have written it:* 3 McC., 442; Harper, 59; 1 Hill, 100; 5 Strob., 58. *Witness may refresh memory from memoranda in his possession:* 2 N. & McC., 331; 1 Rich., 234; 15 S. C., 373; 41 S. C., 149. *Defendant's statements always admissible:* 1 Mill, 34. *Intent to defraud may cover more than one:* 1 McM., 236; 1 Brev., 34.

March 7, 1900. The opinion of the Court was delivered by

MR. JUSTICE POPE. The defendant, C. J. Allen, was tried and convicted of the crime of forgery under an indictment containing two counts—one alleging, in the words of the statute, the forgery of a certain writing and instrument of writing, and the other alleging the uttering of said forged writing. After sentence, he has appealed from such judgment. While his exceptions, as printed, number twenty-two, he has reduced that number by abandoning exceptions 6, 7, 8 and 9, and also abandoning exceptions 14, 15 and 16, and these need not be set out as presented but may be grouped under the following heads, which we will consider in their order:

1. It was error in the Circuit Judge in refusing to quash the indictment because the word "feloneously" does not there appear. This Court has quite recently, in the case of *The State* v. *Bullock,* 54 S. C., 300, considered our statutes relating to this crime, and so, therefore, we will not reproduce much there said. In brief, we may state that originally at the common law the crime was only a misdemeanor, but in the year 1801 it was advanced in this State to the dignity of a "felony," with the punishment of death attached to it. In the year 1845, the legislature changed the punishment from death to fine and imprisonment. In the case of *The State* v. *Rowe,* 8 Rich., 17, the Supreme Court held that, notwithstanding the act of 1845 reducing the punishment, forgery was still a felony under the act passed in the year 1801, though from this judgment

32—56

Judge Wardlaw filed a vigorous dissenting opinion, based upon the thought that if felony with us does not mean a crime punishable by death after the first or the second conviction, he was at a loss to know what it did mean. So that, unquestionably, under our decisions, forgery is a felony. This idea is supported by the case of *McConnell* v. *Kennedy,* 29 S. C., 180, where it was stated, in an action to recover damages for false imprisonment, that the plaintiff, McConnell, had been arrested by the defendant, Kennedy, under warrant supported by an affidavit wherein it was set forth: "That one J. Z. McConnell did, on the 15th day of November, A. D. 1885, *feloniously,* and with the intention of fraud, make false entries on his cash book (he being employed by W. H. Kennedy as clerk), to the great injury and injustice of deponent," because this Court held that by the use of the language just quoted from the affidavit, that although the crime of forgery, *eo nomine,* was not so embraced, yet that the said crime of forgery is set forth more in accordance with our statute defining such crime than if there had been a bold charge of forgery, *eo nomine,* in the affidavit. We do not regard our recent case of *The State* v. *Bullock,* 54 S. C., 300, as an authority for the position that indictments for forgery in this State need no longer contain the word "feloniously," for that question was not made in that case. But it seems to us that the act of the legislature of the year 1887 plays a most important part in settling this question. The act is found in the 19th volume of the Statutes of this State, at page 829. Its title is "An act to regulate criminal practice in the Courts of General Sessions in the State." Its first section, after the use of the enacting words, is as follows: "That every indictment shall be deemed and adjudged sufficient and good in law which, in addition to allegations as to time and place, as now required by law, charges the crime substantially in the language of the common law or of the statute prohibiting the same, or so plainly that the nature of the offense charged may be easily understood; and if the offense be a statutory offense, that the same be alleged

to be contrary to the statute in such case made and provided." By reference to the statutes of this State defining forgery and the uttering of a forged instrument, it will be seen that the word feloniously does not appear in the definition of this crime. But the indictment strictly, in both of its counts, follows the language of our statute defining forgery and the uttering of forged instruments of writing, and the indictment concludes, against "the statute in such case made and provided." We must hold, therefore, that the Circuit Judge did not err as here alleged.

2. "In a trial for forging and uttering a forged instrument, is it competent for the State to introduce in evidence other instruments of writing wholly unconnected with the transaction for which the defendant is being tried, in point of time and otherwise, and introduce testimony tending to show that such instruments were forged and uttered by the defendant?" The facts out of which this question grew are about as follows: C. J. Allen is alleged to have forged the teacher's certificate in which J. W. Hyer is named as the payee, whose certificate was certified to as correct by Lewis F. LeBleux and John Stoll, as trustees of School District No. 16, on the 1st January, 1898, and to have collected from the county treasurer of Dorchester County, in this State, the sum of thirty dollars, in the name of J. W. Hyer as said payee, by his own hand, signed by himself, the said C. J. Allen, on the 4th day of January, 1898. Testimony was introduced by the State tending to show that the name of the payee, J. W. Hyer, was a forgery, that the names of Lewis F. LeBleux and John Stoll, as trustees of School District No. 16, who it was set out in said certificate had certified that thirty dollars was due J. W. Hyer, were forged, and that the sum of thirty dollars called for by said certificate as payable by the county treasurer of Dorchester County to the order of J. W. Hyer, was actually paid by the county treasurer of Dorchester County to the defendant, C. J. Allen, on the surrender by said C. J. Allen of the certificate held in his hands to said county treasurer of

Dorchester County, and that said payment was so made by said county treasurer from the funds in his hands collected for Dorchester County, but after the same had been apportioned to School District No. 16 of said Dorchester County. And testimony was introduced tending to show that C. J. Allen had forged the names of said parties to the said certificate. It was necessary that the State should show in this case that C. J. Allen had forged or uttered this pay certificate with the intent to defraud Dorchester County, for such is the allegations of the indictment. This is an essential in all prosecutions against persons charged with forgery or uttering forged instruments, namely, that it shall be proved to the satisfaction of the jury that the same was done with the intention to defraud some particular person, natural or artificial—*State* v. *Washington,* 1 Bay, 120; *State* v. *Bullock, supra.* But how is this intention of the accused to be made manifest? Clearly, it must be done by his words or acts. That this is true, is sustained by text-writers and by our decisions. For example, Mr. Wharton, in the first volume of his work on Crminal Law, at section 715, says: "As has been elsewhere shown (Whart. Cr. Ev., section 39), if a party is charged with knowingly making, holding or passing forged instruments, and the fact of his possession of the forged instrument is shown, but his knowledge of their character is disputed, it is admissible to prove that about the same time he held or uttered similar forged instruments to an extent which makes it improbable that he was ignorant of the forgery. Nor, as it is now ruled, does it exclude such evidence, if the offense thus introduced had been the subject of another indictment, nor that it occurred subsequent to that under trial, if the two appear to be part of a common system." Now apply this law to the circumstances of the case at bar. The defendant, C. J. Allen, was the superintendent of education for the county of Dorchester, with a seal of office, and the certificates marked "B," "C," "D" and "E" were certificates purporting to be issued by the school trustees in certain of the school districts of Dorches-

ter County, and had impressed upon each the seal of the defendant as superintendent of education for Dorchester County, and each was collected by said C. J. Allen from the county treasurer of Dorchester County, and said certificates bore date respectively the 7th of February, 1898, the 7th March, 1898, and the 27th day of April, 1898, while that certificate, the forgery and uttering of which the indictment set out, was dated 1st January, 1898. Were not these certificates "B," "C," "D," "E" dated and uttered about the same time as that described in the indictment? Were they not a part of the same or common system, although subsequent in point of time to that set out in the indictment? Is Mr. Wharton alone among law-writers in holding the views we just quote? In the 13 Am. & Eng. Ency. of Law (2d edition), at page 1110, it is said: "On a trial for uttering a forged paper, it is competent to show, for the purpose of proving knowledge and guilty intention, that at or about the time of uttering the instrument, the defendant had in his possession or uttered other forged instruments of the same description. An acquittal under an indictment for forging or uttering a particular forged paper will not preclude the State from proving the fact of the possession or uttering of such forged paper in another prosecution against the same party for a crime of the same character." See, also, 3 Greenleaf on Evidence, at page 96. See, also, 2 Starkin on Ev., 4 part, 378, 379. But in his argument the appellant's attorney lays great stress upon our own case of *The State* v. *O'Dell,* 3 Brevard, 552, as antagonizing the views hereinbefore set out. The language of that case relied upon is as follows: "The defendant has been indicted and convicted of passing a counterfeit Spanish milled dollar, knowing it to be counterfeit * * * A motion is made for a new trial on the ground that testimony was offered to prove that the defendant had said, some months before this transaction took place, speaking of other dollars, that he had made them. Also, that he had said he had made and passed counterfeit dollars at fifty cents. It was also permitted to be

proved that implements for counterfeiting were found in his possession * * * With regard to the first, I am of opinion the evidence ought not to have been received. East. C. L., 123. Evidence of fact which went to prove substantive, distinct offenses, other than that with which the prisoner stood charged, ought not to have been admitted unless it went directly to prove him guilty of that offense. Foster, 245, 246. Proof that he made this identical dollar would have been conclusive evidence that he knew it to be counterfeit, and, therefore, might have been proper. But proof that he made or passed any other dollar, *or had implements for coining in his house*, did not go to establish the fact that he knew this dollar to be counterfeit, and, therefore, was improper." The decision just quoted was rendered at the April term, 1816, of the Court of Appeals in Columbia, S. C., and was concurred in by Brevard, Grimke, Colcock, Bay and Smith. Strange to say, at Charleston during the November term, 1816, the Appeal Court held that "On an indictment for counterfeiting, the possession of coining instruments may be given in evidence against the prisoner to prove the *scienter.*" *The State* v. *Antonio,* 3 Brevard, 562. This decision was concurred in by Judges Colcock, Grimke and Bay, in separate opinions, but a dissenting opinion was filed by Judge Nott. The language used by Judge Nott shows very plainly that he failed to grasp the principle of law by which this testimony is rendered competent, viz: that in cases when the intent of the prisoner must be established to the satisfaction of the jury, the words or the conduct of the prisoner, when such words or conduct appear to be part of a common system, are competent to establish the *scienter.* Let us be just to Judge Nott, and, therefore, hear him in his own language on this point, as to a new trial, he said: "The first ground is that, as our statute makes it a distinct capital crime to keep implements for counterfeiting money in one's possession, such evidence ought not to have been admitted in the Court below, on an indictment for merely passing counterfeit money. Having given an opinion on this point

in another case" (clearly referring to the case of *State* v. *O'Dell, supra*), "I do not feel under any necessity to go fully into the reasons for the opinion I now give. I take the rule of law to be that one distinct offense shall not be given in evidence to convict a person of another, unless the proof of one goes directly to prove the other. Thus, for instance, proof that the defendant made the identical dollar in question might have been proper, because it would have proved unequivocally that he knew it to be counterfeit. But proving that he had implements for coining in his possession, did not prove that he knew this dollar to be counterfeit any more than proving that a man stole a horse for which he was not indicted, would be proof that he stole another for which he was indicted. Unless, indeed, there was some evidence, by comparison or otherwise, that these were the moulds in which the dollar passed by the defendant was cast." In the first place, it seems to us that the decision in The State *v.* Antonio, *supra*, overrules that of The State *v.* O'Dell, *supra*. But, in the second place, if Antonio's case did not overrule that of O'Dell, it is very certain that, by at least three other cases, our Court of last resort has affirmed the principle set up in The State *v.* Antonio, *supra;* for in the case of *The State* v. *Houston,* 1 Bailey, 300, the Court held as follows: "It is true, as a general rule, that when a man is on his trial for one offense, it is not competent to prove that he has committed other distinct and substantive offenses. But in such cases as the present, it is competent, in order to prove the *scienter,* to show that the prisoner has passed other counterfeit notes of a similar character, and that he has such in his possession; for although these may be the foundations of other prosecutions, yet they afford evidence, and sometimes very strong evidence, of the knowledge of the falsity of the paper on which the indictment is founded." The Court of Appeals, consisting of O'Neail, Richardson, Evans, Butler, Wardlaw and Frost, in the case of *The State* v. *Williams,* 2 Rich., 418, adopted the declaration of Judge Colcock, just quoted, as a correct statement of the law. The two previ-

ous cases of *The State* v. *Hooper,* 2 Bailey, 37, and *The State* v. *Tutt,* 2 Bailey, 44, were both to the same effect. The syllabus of the first case contains these words : "On an indictment for uttering a counterfeit bank note, *held* that witnesses might be introduced to prove that other notes found upon or passed away by the prisoner were spurious, although such witnesses were not officers of the bank from which the notes purported to have issued." And in the case of The State *v.* Tutt, *supra,* the case just quoted from is approved. It should have been stated that *The State* v. *Petty,* Harper, 59, also sustains the competency of the testimony as to possession of other forged notes to prove *scienter.* The exceptions covered by the present grouping of the same are all overruled.

The next question presented by the appellant is that the Circuit Judge erred when he refused to charge the jury that in an indictment for forgery, if the indictment alleges that such forgery was intended to defraud the county of Dorchester, such indictment is not sustained by proving an intention to defraud a school district of said county. We have devoted so much time to the consideration of the preceding grounds of appeal that we will, in passing upon the present question, content ourselves by stating that the proofs offered showed that the money, collected by the defendant under the forged school certificate, was so collected from the county treasurer of Dorchester County, and that such collection was made under the direct tenor and effect of said certificate for the forging and uttering of which the defendant is indicted. Such being the facts, it was a matter of no moment that the county of Dorchester, through its fiscal officer—the county treasurer—held such money for one of its territorial component parts. Let this exception be overruled. This conclusion, in effect, is decisive of the 21 and 22 exceptions and also the exception 19.

The next ground of appeal complains that the Circuit Judge erred in allowing the State to introduce the duplicate copy of teacher's pay certificate, the original of which had

not been produced, and no testimony offered to show that such original was lost or destroyed, or beyond the control of the State. The mistake the appellant makes in regard to the "duplicate" here referred to is that, under the law, these teachers' certificates are required to be made out in duplicate; one is called the original, the other the duplicate. They are exactly alike. The duplicate is not technically nor really a copy of the original. As is said in Rapalje & Lawrence's Dictionary: "Duplicate. A document essentially the same as some other document. Agreements, deeds *and other documents* are frequently executed in duplicate, in order that each party may have an *original* in his possession" (italics ours). So, also, in Andersons's Law Dictionary, at page 386: "The double of anything, an original repeated, a document same as another, a transcript equivalent to the first or original writing, a counterpart." Each duplicate is "complete evidence of the intention of the parties." The State could content itself with introducing the duplicate in question. Let the exception be overruled.

The next question presented by the appellant relates to the alleged error of the Circuit Judge in refusing to allow the hearsay evidence of one LeBleux, who was dead at the time the statement of such deceased individual was attempted to be offered. There was no error here. Let the exception numbered 18 be overruled. We have considered all the exceptions and overrule each one.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed.