12875

STATE v. MARTIN ET AL.

(152 S. E., 738)

496

September, 1927.

*Messrs. Miller & Lawson,* for appellants,

*Solicitor M. J. Hough,* for the State.

March 29, 1930.

The opinion of the Court was delivered by MR. JUSTICE BLEASE.

The appellants were indicted and tried in the Court of General Sessions for Chesterfield County for violation of the prohibition law.

The indictment contained four counts. The first charged the sale of spirituous liquors; the second, storing of such liquors; the third, having such liquors in possession; and, fourth, the transportation thereof. The presiding Judge, Hon. M. M. Mann, directed a verdict of not guilty as to both of the appellants on the first and second counts. The jury rendered a verdict of guilty as to both the appellants on the third and fourth counts.

The State showed by the evidence of Sheriff Grant and Police Officers Melton and Rivers that the appellants were seen late in the afternoon of the day named in the indictment in an automobile, Martin being the driver; the automobile was stopped in front of the home of one Wash Smith; someone, later ascertained to be Cleve Smith, a son of Wash, came out of the house and got on the running board of the car; the car, with the appellants and Smith, proceeded down the road to a creek and stopped; appellant Gainey got out of the car, pulled a loaded sack therefrom, and with Smith walked to the edge of a road and set down the package. The officers rushed to the place; Smith got away; Gainey called to Martin to leave, one of the officers got on the running board of the car; the sheriff shot into one of the tires of the car and caused it to stop. The sack was found to contain 6 gallons of corn whisky, and other whisky was found in the car, in all about 17 gallons being captured.

The appellants offered no evidence in defense.

There are 15 exceptions. In our consideration of these, we will unite, in some instances, two or more of them.

The appellant Martin moved for a change of venue, because, as he alleged, he could not obtain a fair and impartial trial in Chesterfield County on account of the hostility and prejudice of the sheriff of the county against him. In support of the motion, he submitted his own affidavit, in which he swore that Sheriff Grant was very active in the prosecution of the case against him, that he referred to him as "the king of bootleggers," that the sheriff summoned jurors, and that the officer was very popular and had great influence. He also presented affidavits from some 25 persons to the effect that Sheriff Grant was a popular officer, had great influence with the jurors of the county, and, for this reason, in the opinion of the affiants, Martin could not obtain a fair trial in Chesterfield County. The Solicitor presented an affidavit from Sheriff Grant, to the effect that he had taken no more interest in the case against Martin than he had against other violators of the law, and that he had not attempted to influence any juror. There was presented, also, on the part of the state, an affidavit of 8 citizens of the county stating that, in their opinion, a fair and impartial trial of the case could be had in the county.

The appellants have cited several cases in support of this ground of the appeal, presented in their third exception, but we think it necessary to refer to only one of them, *State v. Sullivan*, 39 S. C., 400, 17 S. E., 865. In that case, where the defendant was charged with murder, a change of venue was granted from Greenville County to Anderson County, because the sheriff of Greenville County was a brother of the person killed by the defendant, and the sheriff had taken part in the drawing of the jurors, and, by his deputy, in serving them, and the sheriff had just been re-elected to his office for a term of four years. But this case is quite different from the *Sullivan case*. The sheriff here had no person-

al interest in, or personal connection with, the prosecution. In seeking to enforce the prohibition laws, he was only performing a duty incumbent upon him by his oath of office and the laws of the state. It does not appear that Sheriff Grant did anything whatever to improperly influence any juror against the appellants, or that he even approached any juror with regard to the case.

In the recent case of *State v. Davis,* 138 S. C., 532, 137 S. E., 139, it was held that the granting or refusing of a motion for change of venue is in the discretion of the Court, but such discretion is a judicial one and must not be arbitrarily exercised. Under the showing made in this case, we think the Circuit Judge very properly overruled Martin's motion for a change of venue. In almost every criminal case where the sheriff of a county is very active in the enforcement of law, as he should be, the same ground urged here could be set up as a reason for a change of the place of trial.

By their fourth exception, the appellants complain of error because there was a refusal to continue the trial beyond the term. The motion was based upon the ground that the affidavits on the motion for a change of venue had been read in the presence of the jurors, who would be called upon to try the case, and, for this reason, it was prejudicial to the appellants to immediately call them to trial after their change of venue motion had been refused. As repeatedly held by this Court, continuances of cases must be left very much to the discretion of the trial Judge. We cannot agree with the appellants' contention that there was an abuse of that discretion in this instance. If we should hold that the refusal of a motion to grant a change of venue was of itself sufficient cause to continue a case, the result would be to practically hold that no criminal case could ever be tried in our Courts, for it is apparent that a defendant, who desired never to be tried, could repeatedly move for a change of venue, simply for the purpose of securing a continuance after the refusal of his motion.

The appellants asked the Court to quash the venire of grand jurors, who found the bill of indictment against them, and also to quash the venire as to the petit jurors, for the reason that Sheriff Grant served both venires, and he was disqualified because of his interest in the prosecution. What we have said heretofore as to the motion for a change of venue applies also to this matter, and the seventh exception, raising these questions, is overruled.

In the exception numbered 7a, it is charged that the presiding Judge erred in refusing the motion to quash the indictment and the venire of petit jurors, for the reason that insufficient notice had been given for the drawing of the jury. We are unable to understand the question raised by this exception. It appears from the record that the motion to quash the venire of petit jurors because proper notice of the drawing of the jury had not been given was made. Counsel for the appellants stated to the presiding Judge that the Clerk of Court on September 2, 1927, addressed a notice to the sheriff requiring the jury commissioners to meet on September 6, 1927, to draw the jury. The trial, it appears, was had on September 21, 1927. In response to the statement made by counsel for the appellants, the Court inquired upon what legal ground the motion was made, and especially asked to be referred to the section of the law that had not been complied with. The record does not show any answer on the part of counsel to the questions asked by the Court. We must assume, of course, that the jury commissioners performed their duty in the matter of drawing the jury. The record absolutely fails to disclose that proper notice of the drawing was not given. There was no basis really, according to the record, for the exception under consideration, and it is overruled.

The fourth count of the indictment, which sought to charge the appellants with "transporting," alleged that the appellants "did willfully and unlawfully transport and convey from a point without this State into

this State, or from place to place within this State alcoholic liquors and beverages, to wit: 17 gallons of corn whisky. * * * " The appellants moved to quash the whole indictment on the ground that in the fourth count several offenses were disjunctively set forth, and that in that count two offenses were charged, namely, one of transportation from a point without this State into this State, and the transportation from place to place within this State. The refusal of the Judge to grant this motion is challenged in the fifth and sixth exceptions. We think the fourth count only charged one offense, to wit, the transportation in violation of law of alcoholic liquors. Section 860 of the Criminal Code, Volume 2 of the Code of 1922, makes it unlawful to "transport or convey any alcoholic liquors from any point without the State into this State, or from one point to another in this State." The language of the statute makes "transportation" a crime whether it be done from one point in the State to another point in the State, or if it be done from a point without the State to a point within the State. This view shows that the presiding Judge was right in the ruling he made. Furthermore, the ground raised was certainly not sufficient to quash the whole indictment. "If the allegations of an indictment were sufficient to constitute any offense whatever, demurrer thereto was properly overruled." (Syllabus) *State v. Cole,* 107 S. C., 285, 92 S. E., 624.

The jury in the case was impaneled, we assume from the little information contained in the record, in the usual way of impaneling a jury in a misdemeanor case, that is, by calling 12 men to the box at the beginning, and thereafter making substitutions because of challenges. At one point, the Solicitor announced that he had no further objection to the jury. The appellants made one or more objections, and thereafter the Solicitor objected to a proposed juror to whom he had not formerly objected, although he had the opportunity to do so. The appellants took the position that the Solicitor could not object at that time. Their

position was overruled. The Solicitor was allowed to challenge the juror peremptorily, and the appellants charge error thereabout in their eighth exception. There was no error. A juror may be peremptorily challenged any time before he is sworn. See *State v. Pendarvis*, 88 S. C., 548, 71 S. E., 45.

When witness Melton was testifying, he made this statement: "They (the appellants) drove down to the run of the creek, and we saw them take a sack out of the back of the car, and from the shape of it we judged it was whisky—" appellants objected to the testimony of the witness as to what he "judged" the sack to contain. The Court quickly ruled: "Strike it out." There was no request by appellants for any instruction to the jury further than what he had said. Now, there is complaint in the ninth exception that there was error on the part of the Judge in failing to admonish the jury to disregard the statement of the witness. The Judge did what the appellants requested him to do; he ordered the testimony struck out. If the appellants wished the Judge to say anything further to the jury about the testimony, they should have at least requested him to say something. In addition, the statement was really not more prejudicial to the appellants than the other evidence in the case. The judgment of the witness that the sack contained whisky was absolutely correct, for in a few minutes afterward he took whisky from the sack. We cannot find any merit in this exception.

The trial Judge charged the jury as to the law of "common enterprise," and the appellants say in their eleventh exception that there was no evidence in the case to warrant such instruction. The review of the evidence we have given shows that the instruction was proper and appropriate.

At the conclusion of the Judge's charge to the jury, appellants' counsel verbally requested an additional charge on circumstantial evidence. The Judge stated that he had already charged the principles requested, and

declined to charge further. An examination of the charge shows that he did instruct the jury very fully as to the law of circumstantial evidence. The verbal charge requested would simply have been a repetition of what had already been charged. There was no error in refusing to keep repeating the instructions, however proper they may have been, and exception 12 is overruled.

The first and second exceptions relate to the refusal of the presiding Judge to grant the motion of the appellants for a directed verdict on the whole case for lack of evidence, and the thirteenth exception charges error in failing to give a new trial for the same reason. The thirteenth exception also charges error in failing to give a new trial because of the Judge's refusal to charge further as to circumstantial evidence, and his charge as to the law of "common enterprise." What we have already said, and a review of the testimony, which we have given, disposes of these exceptions.

The fourteenth exception charges that the sentences imposed were unjust, unreasonable, excessive, and in violation of Article 1, § 19, of the Constitution. The appellant Martin was sentenced to serve not more than 12 months on the third count of the indictment, and a like sentence was given as to the fourth count, but the two sentences were to run concurrently. The appellant Gainey was sentenced to 8 months on each of the two counts, 3 and 4, his sentences to run concurrently. The sentences were imposed under the "Indeterminate Sentence Law" of 1925 (34 St. at Large, 63), which was repealed on March 1, 1928 (35 St. at Large, 1224). The sentences were within the discretion of the presiding Judge so long as they were agreeable to law. The sentences came within the provisions of the prohibition law, and there was no error in this regard.

We have saved the tenth exception to be passed upon last, not that it is the best of the exceptions, but for the reason that is more interesting, and the matter

upon which it is based has caused us to smile. The work of this Court is generally very serious, and especially so in cases involving the liberty of a citizen of the State. It is refreshing and relaxing to have occasionally, in a record which comes before us, something of humorous nature.

On the motion for a directed verdict, counsel for the appellants evidently read to the presiding Judge some decisions of this Court, but we have not been favored with the titles of the cases cited. Appellants' attorney was interrupted by the Court with this statement:

"I am thoroughly acquainted with all those cases, and I am glad to hear you make your argument, but, as far as those decisions are concerned I am thoroughly acquainted with them. I do not want to cut your argument short."

The attorney by way of interrogation said: "Your suggestion is that you do not care to hear me any further?" Thereupon, and in the course of his ruling upon the motion for a directed verdict, the learned Circuit Judge used this language:

"I think not, not on those particular cases. Now, with reference to the first count there, as to selling, there is insufficient testimony to go to the jury on the first count. On the other counts, with reference to the authorities which have been cited, I am very frank to state that in the past the Supreme Court and I have entertained very separate and distinct views in reference to the law as to how these trials should be conducted. My attitude has always been that a petit jury is the most responsible and most reliable set of men in the world, and most apt to come to a correct conclusion on a state of facts, having the privilege of having the witnesses examined before them, and being the best judges of the credibility of the witnesses. I stick to that. I expect to stick to it. The Supreme Court, in some recent decisions, has taken a very different attitude with respect to what constitutes an offense against these various statutes. My view is mine, and I am charged with upholding the law as I see it,

and I propose to do it regardless of whether a higher Court reverses me or not. That is their responsibility. If they see fit to disagree with me, they can do it; but I hold that the mere fact of disagreement does not mean that they are right and that I am not right. They are excellent gentlemen and excellent lawyers, all my personal friends, and I have a high personal regard for them. If I see fit to differ with them, I have as much right to differ with them as they have to differ with me. I overrule your motion as to the remaining counts of the indictment."

In the exception under consideration, the appellants say that it was highly prejudicial to them for the Court to advert to the decisions of the Supreme Court brought to the Court's notice in the language used by the trial Judge, for that language disparaged the duty and province of the Supreme Court and clearly indicated that the jury should not be bound by its decisions.

In the argument on the appeal, the position is taken by the appellants that the expressions of the trial Judge in the presence of the jury, which were in fact made to the jury, were entirely unnecessary; and that they were highly prejudicial to the appellants, for thereby the jury was influenced in arriving at its verdict, even to the extent of disregarding the decisions of this Court.

We have examined carefully the remarks of the distinguished presiding Judge, and from our study of them we are unable to agree with the position of the appellants that his language was such as to require a reversal of the judgment below. First of all, it is impossible for us to feel offended at the apparent attitude of the trial Judge toward the decisions of this Court, because it is to be especially observed that the Judge, who it seems, by himself alone, is more able than the five Justices of this Court to determine legal questions, has paid the members of this Court, out of his great wisdom, the very high compliment of declaring us to be "excellent lawyers." Moreover, he has excused all of our *erroneous*

*decisions,* and put us on the defensive in maintaining the correctness of those decisions, by claiming us as his "personal friends." The right to criticize is the prerogative always of a personal friend, and judges are not required to be exceptions to that rule.

The appellants have paid more attention to the Judge's remarks than the Judge himself did. All the time the Judge was talking, he fully realized that he was *just talking.* As an "excellent lawyer" and as our "personal friend," he knew that the intelligent petit jury before him, whose abilities he so much rightly commended, knew that a Circuit Judge in South Carolina was bound, under the Constitution of this State, to yield to the decisions of the Supreme Court, whatever the Judge's own opinion of the law might be. He knew full well, also, all the time *he was talking* to the jury, that the Supreme Court would not hesitate to reverse his decision, if the Supreme Court thought his decision erroneous as a matter of law, and that the error was prejudicial to the appellants. The learned Circuit Judge in this very case gave absolute proof that we are correct in our view that, all the time *he was talking,* he intended to yield absolutely, as he should do, to the decisions of this Court, even if "his view" was "his view," and like the law of the Medes and Persians, never subject to change.

Yes, our good friend, and the excellent lawyer, the distinguished Judge, who presided in this case, after the attorneys had concluded their arguments to the jury, proceeded to give the jury his final charge and instructions on the law of the case. The first statement he made to the jury was to the effect that the charges in the indictment, which the Court would submit to the jury for consideration, "will be found in counts three and four of the indictment." The fourth sentence of the Judge's charge was this:

"Looking more carefully into the second count, which charges storing, I withdraw that from your consideration, *because under the ruling of our Supreme Court,* in order

to establish that it must be shown conclusively, that the keeping in possession had become habitual, and there is not sufficient evidence here for the Court to feel warranted in submitting that proposition to you; therefore, *it withdraws that from your consideration."* (Emphasis added.)

So it will be seen that in the face of his previous declaration to the effect that *"my view is mine,"* on more mature deliberation, the trial Judge remembered his duty and *gracefully yielded* to the decisions of this Court. Since the Court followed the law as we have declared it, even though it is apparent he does not like that law, we cannot say that he committed prejudicial error.

The judgment of this Court is that all the exceptions be overruled, and the judgment below be affirmed.

Mr. Chief Justice Watts and Messrs. Justices Cothran, Stabler and Carter concur.