14289

STATE v. BIKLE

(185 S. E., 753)

*Messrs. J. D. E. Meyer, Stoney, Crosland & Pritchard* and *Mary E. Polhemus,* for appellant,

*Messrs. Robert McC. Figg, Jr., Solicitor,* and *J. Waties Waring,* for respondent,

May 6, 1936.

The opinion of the Court was delivered by Mr. Justice Fishburne.

On March 12, 1934, the Grand Jury for Charleston County returned a true bill on an indictment containing 112 counts, each charging that on a certain day named in the count Louis A. Bikle did willfully, unlawfully, and feloniously commit embezzlement of a specific sum of money, with fraudulent intention, in that he, being then and there the treasurer of the commissioners of public works of the City of Charleston, and then and there being charged and intrusted with the care, possession, safekeeping, transfer, and disbursement of large sums of public money owned by and belonging to the city council of Charleston and to the commissioners of public works, did willfully, unlawfully, and feloniously embezzle and take and appropriate such good and lawful money of the said public funds to his own use and purpose, with intent to defraud the city council and the commissioners, and did then and there embezzle and defraud them.

On March 13, 1934, the defendant was arraigned, and after a motion to quash the indictment was made and overruled, he pleaded not guilty.

Thereafter, in the March, 1934, term of the Court of General Sessions for Charleston County, upon due notice, he made a motion for a change of venue, based upon his own affidavit and the affidavits of 226 other citizens of Charleston County, to the effect, in substance, that in their opinion he could not get a fair and impartial trial in that county. The State offered, in opposition to the motion, the affidavits of 187 citizens of the county that in their judgment the defendant could obtain a fair trial in Charleston County.

After hearing full arguments for and against the motion, the presiding Judge, Hon. Arthur L. Gaston, overruled the motion.

The case was thereafter continued at the March, June, September, and December terms of the Court for the year 1934.

At the March, 1935, term the case was called for trial. No new motion to change the venue was made at this time nor was any additional showing therefor made or suggested. The State elected to go to trial on the thirty-sixth count of the indictment, which charged the embezzlement on October 23, 1933, by the defendant of $1,049.14.

During the trial the State offered the evidence of 23 witnesses, and introduced also a considerable amount of documentary evidence. The defense offered no evidence, and at the conclusion of the State's case moved for a directed verdict upon the ground that the evidence tended to prove larceny and not embezzlement of the funds in question, and that therefore there was a variance between the allegations of the indictment and the proof. This motion was overruled by the presiding Judge. The trial resulted in a verdict of "Guilty on Count 36," after which a motion for a new trial was made and refused. Thereupon Judge Dennis sentenced the defendant to serve a term of five years in the State penitentiary, and to pay a fine of $100.00.

The defendant submitted certain requests to charge, eleven in number, some of which were charged, some modified, and some refused.

Exceptions have been taken in this appeal to the modification of request No. 6, and the refusal to charge requests Nos. 2 and 5, and from the orders refusing to quash the indictment, refusing the change of venue, the admission of certain evidence, in overruling the defendant's motion for a directed verdict, and in imposing upon the defendant a sentence not warranted by law.

The defendant has formulated six questions, based upon the exceptions, which will be considered in sequence.

Should the indictment have been quashed?

This question is predicated upon Exceptions 1 and 2, which allege that the allegations of the indictment lacked sufficient particularity to enable the defendant to properly prepare his defense; and upon the further ground that the indictment lacked sufficient definiteness, so that the defendant, if acquitted, could successfully plead *autrefois acquit*. The defendant-appellant frankly concedes in his brief that the exceptions presenting this question are without merit under the cases of *State v. Shirer,* 20 S. C., 392, *State v. Dewees,* 76 S. C., 72, 56 S. E., 674, 11 Ann. Cas., 991, and *State v. Wells,* 162 S. C., 509, 161 S. E., 177.

Was reversible error committed in refusing to change the venue for trial?

This question is presented by Exception 3, which asserts that it was error, amounting to abuse of discretion, to overrule the motion for change of venue, in view of the showing made that defendant could not get a fair and impartial trial in Charleston County. The showing referred to is to be gathered from the very lengthy and voluminous affidavit of the defendant himself, referring to news stories from the press and short affidavits from 226 citizens that he could not in their judgment get a fair and impartial trial. Opposed to these were the 187 affidavits of other citizens of Charleston County that in their judgment defendant could obtain a fair and impartial trial.

A careful examination of these affidavits convinces us that Judge Gaston, the learned and experienced Judge before whom the motion was made, exercised wise discretion in overruling the motion.

In the case of *State v. Jackson,* 110 S. C., 273, 96 S. E., 416, relied upon by the defendant, 20 prominent citizens of the county made affidavits to the effect that the accused could not obtain a fair trial, and there was no showing to

the contrary. Refusal of the change under those circumstances was held to be abuse of discretion; the showing being entirely one way, and uncontroverted. The present case is far different, for here there was a conflicting showing, upon which Judge Gaston, in the exercise of his sound discretion, passed and ruled. No abuse of his discretion has been shown, nor has he been shown to have committed error of law in his ruling.

In the case of *State v. Davis,* 138 S. C., 532, 137 S. E., 139, the showing made by the defendant for a change of venue was so convincing that the State admitted that there was a strong sentiment against the defendant; the Governor had reasons for thinking that the defendant would be unsafe in the Winnsboro jail; and, on account of the influence of the family of the deceased in the county, the defendant could not even get paid counsel in that county to assist in the striking of the jury for the trial. The facts were not in dispute, and the issue was practically uncontroverted. The *Davis case* was far different from the instant case, and in line with, and governed by, the case of *State v. Jackson, supra.*

It is significant, in considering whether reversible error was committed, amounting to abuse of discretion, to note what importance defendant himself attached to the motion, and whether subsequent events corroborated or refuted this ruling.

The defendant was indicted and arraigned in March, 1934, but was not brought to trial until 12 months later. He was then tried upon a new indictment, and had a legal right to make another motion for a change of venue, at a different time and before a different Judge. It is also significant that at the trial, while the State had exhausted its five challenges, when the jury was completed the defendant still had a challenge left, and only five jurors were disqualified on their *voir dire,* or for cause by the Court.

The showing made lacks much of convincing us of the

presence in the community or at the trial of passion, prejudice, or an inflamed atmosphere against the defendant. *State v. Goodwin,* 127 S. C., 107, 120 S. E., 496; *State v. Francis,* 152 S. C., 17, 149 S. E., 348, 70 A. L. R., 1133; *State v. Martin,* 155 S. C., 495, 152 S. E., 738. This exception is overruled.

Was reversible error committed in permitting the introduction of evidence tending to establish other counts alleged in the indictment, but on which the defendant was not being tried at the time?

This question is predicated upon Exceptions 4, 5, 6, and 7.

Exceptions 4 and 6 assert that evidence of transactions other than that charged in Count 36, upon which defendant was being tried, was irrelevant to the issue. Exception 5 asserts that evidence of other transactions did not tend to establish defendant's intent in the transaction being tried. Exception 7 asserts that evidence of the actual amount of the defendant's total shortage was irrelevant to the issue being tried, and was highly prejudicial.

We will discuss Exception 7 first.

This exception is predicated upon the overruling of the objection of defendant's counsel to the admission of testimony dealing with the numerous items misappropriated and included in the total defalcation charged, amounting to $48,517.92. The testimony objected to is a portion of that given by Mr. Carson, who audited and examined the books of the defendant, and who checked the cash receipts and disbursements over the period during which the several amounts charged in the indictment were embezzled. He stated that the specific amount charged in Count 36 was missing from the funds of the commissioners, and had never been returned.

It is apparent from an examination of the record that the evidence was relevant to show that the money charged in Count 36 to have been embezzled was still missing, and had not been returned. This was established by a check of the

total cash receipts and total disbursements of the commissioners for the period in question, the establishment of the difference between receipts and disbursements, and the inclusion of the funds embezzled in the thirty-sixth count transaction in such difference or missing amount. It is clear that, if this had not been shown, it might have been contended that the evidence did not show beyond a reasonable doubt that the funds referred to in the thirty-sixth count were not replaced, and were still missing. The evidence was directly relevant to the issue, and derived from defendant's books as treasurer.

But, apart from this, the record shows that the witness Mr. Carroll testified to substantially the same matters without objection by the defendant.

Exceptions 4, 5, and 6 are without merit under numerous cases.

In *State v. Lyle,* 125 S. C., 406, 118 S. E., 803, cited by the defendant, the charge was forging and uttering a check in an Aiken bank. The State introduced evidence of other forging and uttering by the accused at other Aiken banks, at about the same time, and also introduced evidence of similar offenses at banks in Georgia ten days, thirteen days, and seven weeks before the offense being tried.

It was held that the evidence of the Aiken transactions was properly admitted, but that the Georgia evidence was inadmissible.

The trial Court admitted the Georgia evidence on three theories: (1) As proving identity; (2) as proving intent to defraud; and (3) as proving "system of crime." This Court held that the Georgia evidence did not prove identity because the "similarity" must have established such a connection between the crimes as would logically exclude, or tend to exclude, the possibility that the Aiken crime could have been committed by another person, and the evidence did not so prove. On the question of intent, the Court held that the evidence was not necessary to such proof, because

the accused, while denying the crime, had conceded upon the record at the trial that the intent to defraud was present in the offense, and therefore intent was not a disputed issue in the case. On the question of "plan or system," the Court held that "no such connection was shown to exist between the separate Georgia offences and the Aiken crime as would constitute them practically 'a continuous transaction,' " and that the evidence was therefore not admissible on this issue.

But the instant case does not come within any of the reasons assigned for excluding the evidence in the *Lyle case*. Here the similarity was such that the crime could only have been committed by this defendant, as found by the jury, not only because of his peculiar opportunity of access to the records of the commission which were altered and forged, but also because the forgeries and alterations were all proved to be in his handwriting. Unlike the *Lyle case*, intent was not conceded here, but strongly contested, as shown by the defendant's seventh and ninth requests on the subject of fraudulent intent and mistake. The plan, system, procedure, or method in the instant case was undoubtedly proved by showing such connection between the transactions disclosed by the various documents and vouchers offered in evidence as to constitute them practically "a continuous transaction."

It would seem to be clear in this case that the evidence, the introduction of which is complained of, was admissible on all three of the theories discussed in the *Lyle case*, and any one would have been sufficient, as shown by that decision.

In that case *State v. Lyle*, at page 424 of 125 S. C., 118 S. E., 803, 810, the Court held that where willful intent to defraud or guilty knowledge must be proved, "intent to defraud is of the essence of the crime, and previous offenses of a similar character by the same person may be proved to show such intent. *State v. Rountree*, 80 S. C. [387], 391, 61 S. E., 1072, 22 L. R. A. (N. S.), 833; *State v. Allen*, 56 S. C., 495, 35 S. E., 204; *State v. Williams*, 2 Rich., 418,

45 Am. Dec., 741; *State v. Jacob*, 30 S. C., 131, 8 S. E., 698, 14 Am. St. Rep., 897; *State v. Talley*, 77 S. E., [99], 100, 57 S. E., 618, 11 L. R. A. (N. S.), 938, 122 Am. St. Rep., 559; *State v. Winter*, 83 S. C. [153], 156, 65 S. E., 209; *State v. Ray*, 91 S. C., 551, 75 S. E., 174; *State v. Owens* [124 S. C., 220], 117 S. E. [536], 537."

The defendant's intent to defraud was strongly denied, and the defendant requested the Court to instruct the jury that such intent must be shown, and that mere mistake was not sufficient. The evidence complained of was most material and relevant to that issue, and proof of the documents involved in practically identical transactions at about the same time as that being tried, and shortly before, and thereafter, committed by the defendant, not only tended to establish that there was no mistake and that there was guilty design and willful intent to defraud in the method, means, and result of defendant's acts, but tended to prove such intent beyond any reasonable doubt, as the State is required to do.

In the case of *State v. Weldon*, 39 S. C., 318, 17 S. E., 688, 689, 24 L. R. A., 126, the Court said: "While it is quite true that the general rule is that, where a person is on trial for one offense, it is not competent to receive evidence tending to show that he had previously committed other offenses, even of the same character, yet there are exceptions to this rule; and, where the evidence tends to show that the series of offenses are so connected together as practically to constitute a continuous transaction, then it is competent to receive evidence of such continuous offenses." See, also, 9 R. C. L., 1295.

It conclusively appears, therefore, that under the case of *State v. Lyle, supra*, and the authorities therein cited, the evidence, the admission of which is complained of, was admissible, and that these exceptions should be overruled upon those authorities.

But, although appellant argues this point as if the question were the introduction of evidence merely that defend-

ant had committed other distinct crimes, such is not the case. In the present case, the transaction being tried is supported and proved by a legitimate check, an altered check, a duplicate voucher, an altered original voucher, etc. The State introduced in evidence similar legitimate and altered checks, duplicate and altered vouchers, etc., and especially checks as yet unaltered and differing from the check stubs, and these were used for the purpose of comparison with the documents in evidence on the transaction being tried, so as to establish the method used by the defendant in such transaction, and as the basis of the witness McCartney's expert opinion evidence that the purported rubber stamp indorsements on the check for $1,049.14 were concocted from several single line stamps, and were therefore forged by the defendant.

The transactions proved were all part of the scheme and operation of the defendant to misappropriate the commission's funds systematically, and almost daily. They were close in time, and related in detail and continuity with the specific transaction being tried.

Should the trial Court have directed a verdict in favor of the defendant at the close of all the testimony?

This question is raised in Exceptions 8 and 9, upon the ground that the evidence of the State did not make out a case of embezzlement of public funds by the defendant, and therefore there was a variance between the indictment and the proof.

The defendant says in his brief that what the State proved was not a case of embezzlement, but a case of larceny.

To sustain this contention he asserts that the evidence shows that he formed the intention of misappropriating the funds of the commission before he secured the countersignature of the commissioner to the check in question, which was necessary, and before he cashed the check over the counter of the bank and got the funds. He also asserts that he secured the countersignature of the commissioner by

trick, fraud, and artifice, because he procured it on an altered and fraudulent voucher, which deceived the commissioner into countersigning the check and intrusting him with it. Based upon this argument and these assertions, he contends that, although he came into possession of the commissioners' public funds as treasurer of the commission, and in the usual and routine manner, his possession was unlawful because of his fraudulent intent and artifice, and that therefore, when he misappropriated the funds, he committed larceny and not embezzlement.

Embezzlement of public funds in South Carolina is covered by Section 1510 of the 1932 Code. Article 10, § 12, of the Constitution of 1895, provides for the passage of suitable laws for the safekeeping, transfer, and disbursement of public funds, and the keeping of records; and made it the duty of the General Assembly to pass laws making the embezzlement of such funds a felony punishable by fine and imprisonment, and the disqualification of the party convicted thereof from further holding office. Section 1510 was enacted pursuant to this constitutional mandate. This section was amended by Act February 5, 1934, 38 St. at Large, p. 1197, but, as the offense here charged was committed in 1933, the amendment has no application to this case.

In *State v. Alexander,* 140 S. C., 325, 138 S. E., 835, 838, it was held:

"One of the main objects of the statute was to reach cases of stealing, misappropriation, or conversion of public funds, by whatever name the acts may have been called, where the old laws against larceny and breach of trust permitted those who seemed to regard public funds as their own private property to escape with their spoils without any punishment. Persons of this last-mentioned class have been dignified to some extent by being referred to as 'embezzlers' rather than as 'thieves.' While one charged with embezzlement is entitled to all the protection given accused persons under our Constitution and statutes, it was never intended

that persons who are guilty of using public funds for their own benefit should escape punishment by resorting to the same old technicalities that formerly availed those charged with larceny. While preserving the rights of a defendant in a case of this nature, the statute should be construed broadly, to protect the taxpayers of the State, and the counties thereof, who have intrusted their moneys with men presumed to be honest. A narrow construction would tend to defeat the very purpose for which the act was placed among our laws.

"Mr. Black, in his law dictionary, defines the term 'embezzlement' to be:

" 'The fraudulent appropriation to his own use or benefit of property or money intrusted to him by another, by a clerk, agent, trustee, public officer, or other person acting in a fiduciary character.'

"Reading our statute, with Mr. Black's definition in mind, it appears, then, that our legislative enactment, succinctly stated, makes it a felony for one charged with the safekeeping and disbursement of public funds to fraudulently appropriate to his own use or benefit any of the funds intrusted to him."

See, also, 9 R. C. L., 1265, 1286.

A summarized statement of the essential facts in this case shows that the defendant, as treasurer of the commissioners of public works for the City of Charleston, handled and disbursed all of the commission's funds; when funds were received he was required to, and did, deposit them in the bank; he drew all checks on such bank account, signed them as treasurer, and then secured the countersignature of one commissioner. When the countersignature of a commissioner had been secured, he cashed checks payable to "pay roll" over the counter of the bank, as treasurer, and the bank paid such checks to him in money, as treasurer. As stated, the checks were payable on his sig-

nature as treasurer. When he cashed such checks at the bank, he was not required to indorse them, he being the treasurer. When Mrs. Snelson, the cashier and clerk of the commission, cashed such checks in his absence, she was required to indorse them. No one else cashed "pay roll" checks at the bank. In the case at bar, the defendant signed the check for $1,049.14, as treasurer; as treasurer he presented to and procured from a commissioner the countersignature; as treasurer he presented the check, payable to "pay roll," at the bank; and the bank paid to him, as treasurer, the amount of the check, $1,049.14. The bank did not pay him the money as Bikle, individually, but as Bikle, treasurer of the commissioners of public works. He then appropriated the money so received as treasurer to his own use and benefit, and thereafter altered his records and the check when returned from the bank, to conceal his misappropriation. He was intrusted in the fiduciary capacity of treasurer with the handling and disbursement of public funds of the commission; and, by violating that fiduciary relation, he took and converted to his own use such public funds.

Under these circumstances, it cannot be said that the inhibition of Section 1510, and the punishment therein provided, was not intended by the Legislature to apply to him. To so hold would be to give to the statute a narrow construction, which "would tend to defeat the very purpose for which the act was placed among our laws." *State v. Alexander, supra; State v. Ezzard*, 40 S. C., 312, 18 S. E., 1025.

The case of the *State v. Posey*, 88 S. C., 313, 70 S. E., 612, cited by the defendant in his brief, does not support the contention of appellant and is easily distinguishable from the facts in this case. And the cases cited by him from other jurisdictions are not helpful, since, as stated by the Court in *State v. Alexander, supra,* "the Courts of the several jurisdictions must always look to their respective statutes in determining questions pertaining to the crime [embezzlement]."

The defendant under our statute (Section 1510), was an officer or other person, "charged with the safe keeping, transfer and disbursements of any public funds"; as such officer and person he signed the check to obtain such funds, and as such officer and person he cashed such check, after countersignature, and got the funds; and he embezzled the funds, fraudulently appropriating them to his own use and benefit, with intent to deprive the owner of the use thereof. His fraudulent intent, under the authorities cited, at the time of misappropriation, is the requisite intent. He was not only intrusted with the right to check on the bank account, subject only to a commissioner's countersignature, and also with the right to handle, cash, and disburse countersigned checks made payable to "pay roll," but the commissioner, by countersigning and delivering the check to him, officially intrusted him with the check to be handled as treasurer of the commission.

The defendant's fraudulent intention prior to getting the funds, and his fraud in getting them, do not shield him from the statute, so long as he fraudulently intended to misappropriate them when the conversion occurred. *State v. Alexander, supra; State v. Ezzard, supra.*

Was reversible error committed in the Judge's charge or in refusing to charge certain requests submitted on behalf of the defendant?

The question is covered by Exceptions 10, 11, 12, and 13.

Exception 10 segregates a small portion of the charge, and asserts that this portion does not define embezzlement, but merely draws the distinction between public funds in embezzlement and private funds in breach of trust.

By referring to the entire charge of the learned trial Judge, it is made entirely clear that he distinguished between larceny and embezzlement, and charged the jury the elements of embezzlement; and that he charged the defendant's third request, his fourth request, and the elements of the offense set out in the sixth request. He also charged the

seventh, eighth, and ninth requests, which clearly show that the jury were fully instructed on the applicable principles of law covering the crime charged in the indictment, and could not have been misled thereby. The charge shows that the jury was clearly instructed on the elements of the offense and instructed to acquit the defendant if the State had not proved these elements beyond a reasonable doubt.

Exception 11 charges error in refusing the second request, to the effect that, if possession of the funds was obtained through artifice, trick, or other fraud, the crime was larceny and not embezzlement, and the defendant must be acquitted.

Exception 12 charges error in refusing the fifth request, to the effect that, if the defendant conceived the purpose to convert the funds to his own use before they came into his possession, he must be acquitted on the charge of embezzlement.

Exception 13 charges error in modifying the sixth request, by eliminating the requirement that the defendant must have conceived the purpose to convert the funds to his own use after they came into his possession as public funds.

The propositions here presented have already been discussed and passed upon in this opinion. These three requests ignore the provisions of the statute, which provides punishment for those charged with the safekeeping, transfer, and disbursement of public funds who embezzle the same. As we have shown above, the criterion of the offense is the fact that the defendant came into possession of the public funds by virtue of his office and agency. The statute does not draw fine distinctions as to the technical attributes of such person's immediate possession or prior state of mind.

Judge Dennis charged the jury as follows: "I charge you, it does not make any difference how long he had it in his mind, whether it was before he got it or after he got it, if

that intention was present in his mind at the time of the conversion. If a man is entrusted with public funds, it makes no difference at the time he is entrusted with them if he intended to steal them or not, or whether he intended to carry out his trust faithfully. He may have his mind made up to steal them, or he may not, but if at the time he appropriated them to his own use, intending to deprive the owner of the use of them, that is what counts."

Under *State v. Alexander, supra,* it is difficult to see how the trial Judge could have construed the statute other than he did. To have charged the requests referred to, he would have had to qualify the statute far beyond the legislative intention and the judicial construction, as we have shown above.

Was the sentence imposed in accordance with the Constitution?

The sentence imposed was a term of five years, and a fine of $100.00. The appellant does not indicate what term of years he would suggest for his offense, but he does suggest that instead of $100.00 he should have been fined the amount of his embezzlement, $1,049.14. If this was error, it was in his favor, and he cannot complain of it, as held by numerous decisions.

As to the term of years, the Constitution and statute clearly meant to require no mathematical relation between the amount and the time, but merely meant that a substantial sentence for a substantial embezzlement should be imposed, to the end that "the safekeeping, transfer and disbursement" of public funds provided by taxation should be well protected from the dishonesty of those handling such funds.

If there is any lack of relation between the amount and the term, it may as well be said to be in defendant's favor as against him, when it is borne in mind that sentences as heavy as five years have been upheld for the larceny or misappropriation of far less sums than $1,-

049.14. It would seem to be in the sound discretion of the presiding Judge, under the circumstances, and certainly no abuse of discretion has been shown; the offense being a serious and deliberate misappropriation of public funds by a trusted official, and the amount being substantial.

We have given the most careful scrutiny and consideration to the entire record in this case.

The defendant in his brief states that: "While the conduct of the defendant does not comport with innocence, the appellate Court should not, upon an improper indictment, or upon the consideration of incompetent evidence, or upon an improper charge to the jury, delivered by a learned trial Judge who evidently misapprehended the testimony or misunderstood the position taken by counsel for the defense, conclude that the defendant is guilty of some wrong and then hold that the errors committed do not justify a reversal."

The Court, in this opinion, has fully examined into these questions, and has reached the conclusion that the defendant has been tried in accordance with law, before a fair and impartial Judge of rare discernment, and before an unprejudiced jury.

We find no error.

All exceptions are overruled.

The judgment of the Circuit Court is affirmed.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES CARTER, BONHAM and BAKER concur.