## 11375

### STATE v. GOODWIN

#### (120 S. E., 496)

1. CRIMINAL LAW—CHANGE OF VENUE WITHIN CIRCUIT JUDGE'S DISCRETION.—The granting of a motion to change the venue is within the discretion of the Circuit Judge when exercised without legal error.

2. CRIMINAL LAW—AFFIDAVITS HELD TO JUSTIFY TRIAL COURT'S REFUSAL TO CHANGE VENUE OF MURDER PROSECUTION.—Where about ten citizens swore they believed that defendant in a murder prosecution could not obtain a fair trial and that there had been threats

Note: On silence of accused on statement in his presence as confession, see note in 25 L. R. A. (N. S.), 543.

of lynching, and a greater number of citizens believed that he could obtain a fair trial, the trial Court's refusal to change the venue *held* justified.

3. CRIMINAL LAW—THAT DEFENDANT REMAINED SILENT WHEN OFFICER WAS TOLD HE HAD KILLED DECEDENT HELD INADMISSIBLE AND HARMFUL.—Where defendant was under arrest for a misdemeanor and no charge of homicide had been made against him when he and the officer came into the presence of decedent's stepdaughter, who demanded that the officer take defendant away and stated that defendant had killed decedent, admission of evidence that defendant made no response *held* error and harmful, though the issue whether the evidence was of sufficient significance to justify its consideration was left to the jury.

4. CRIMINAL LAW—WHETHER CONFESSION VOLUNTARY PRELIMINARY QUESTION FOR JUDGE.—When a confession is offered as voluntary, the question whether it is voluntary must be determined in the first instance by the presiding Judge.

5. CRIMINAL LAW—TRIAL JUDGE MAY SUBMIT ISSUE WHETHER CONFESSION VOLUNTARY TO JURY.—Where the evidence upon the question whether a confession is voluntary is conflicting and the trial Judge is not satisfied that the confession was voluntary, he may submit that issue to the jury under instructions to disregard it if they find that it was not voluntary.

6. CRIMINAL LAW—ERROR TO ADMIT INVOLUNTARY CONFESSION.—Where the evidence is susceptible of no other conclusion than that a confession was involuntary, it is error for the trial Judge not to exclude it.

7. CRIMINAL LAW—TESTIMONY OF OFFICERS AS TO DECEDENT'S DECLARATIONS HELD HEARSAY.—In a prosecution for murder, testimony of the Sheriff and of a Magistrate as to decedent's declarations complaining of defendant's conduct and applying for a peace warrant *held* inadmissible, being hearsay.

Before ROBERT LIDE, SPECIAL JUDGE, Bamberg, Winter Term, 1922. Reversed and remanded.

E. L. Goodwin was indicted for murder and upon conviction of manslaughter he appeals.

The order of Circuit Judge S. W. G. Shipp, referred to in the opinion, was as follows:

"This is a motion to change the venue in the above cause from Bamberg County to some other County in the Circuit, on the ground that defendant cannot obtain a fair trial in Bamberg County.

"Upon considering the affidavits for and against the motion, I am of the opinion that I should overrule the motion.

"The motion papers are general in terms, and amount to this: That about ten citizens believe that the defendant cannot obtain a fair trial in Bamberg County, and are informed that there were threats of lynching at the time of the homicide, some months since, while a much greater number of citizens believe that defendant can obtain a fair trial in said County.

"I do not think that I would be justified in ordering a change of venue on the showing made in the face of the affidavits *contra*.

"Ordered, that the motion be, and the same is, refused."

That part of the charge to the jury referred to in the opinion, was as follows:

"Now, gentlemen, there may be a confession of a crime that is charged against a person, and if that confession is made voluntarily, and without offer of reward, or compulsion or under duress, it may be taken as evidence against him by the jury. There is also recognized such a thing as an implied confession or an acquiescence on the part of a person accused of crime from which the jury may imply a confession. If a party hears a crime charged against himself, and made in his presence, and says nothing, it is for the jury to determine what force should be given to the silence of the accused. I do not charge you that there is evidence against the accused, but do charge you this is a circumstance which the jury may consider when they go into a consideration of the case or the charges with which the accused is confronted.

"Now, I am going to give you the rule as laid down in law to govern your consideration of a matter of this kind, and to caution you as to the care that should be exercised by you in its consideration. The rule on the subject of acquiescence in the statements made by another in the presence of the defendant is thus stated: 'Admissions may also be

implied from the acquiescence of the party. But acquiescence, to have the effect of an admission, must exhibit some act of the mind, and amount to voluntary demeanor or conduct of the party. And whether it is acquiescence in the conduct or in the language of others, it must plainly appear that such conduct was fully known, or the language fully understood by the party, before any inference can be drawn from his passiveness or silence. The circumstances, too, must be not only such as afforded him an opportunity to act or speak, but such, also, as would properly and naturally call for some action or reply, from men similarly situated.'

"Now, I charge you, gentlemen, that such testimony must be considered by you with caution. You must consider whether under the circumstances the accused would reasonably be expected to speak out. You must consider the attitude of his mind, and all of the circumstances surrounding a transaction of this kind, whether under all of the circumstances he would reasonably be expected to speak out and deny the charge, whether or not his act and conduct was a voluntary act of the mind, or would be calculated, or from which the jury might reasonably infer, an acquiescence and implied confession. It is only a circumstance, as I have stated, that may be considered by the jury. The weight of the testimony and the force you will give to testimony of this kind is a matter entirely for the consideration of the jury. The defendant in this case, as in all cases, must be measured by the rule of reason: What should reasonably be expected of him? What you would reasonably expect his actions and attitude to be."

*Mr. R. M. Jeffries,* for appellant, cites: *Silence of accused upon criminal accusation:* 70 S. C., 498. *Hearsay as to threats inadmissible:* 13 S. C., 30; 70 S. C., 498. *Testimony did not measure up to rule as to circumstantial evidence:* 66 S. C., 394; 95 S. C., 387.

*Mr. R. L. Gunter, Solicitor,* and *J. W. Crum,* for respondent, cites: *Change of venue discretionary:* 6 S. C., 313; 8 S. C., 238; 61 S. C., 257. *Effect of silence under accusation:* 32 S. C., 392; 1 Enc., Evid., 367; 74 S. C., 500. *Relevancy of testimony largely in the discretion of the trial Judge:* 35 S. C., 537; 60 S. C., 67; 72 S. C., 350; 83 S. C., 58; 85 S. C., 273. *Directed verdict improper where there is competent evidence on the issues:* 70 S. C., 390; 80 S. C., 386.

December 13, 1923.

The opinion of the Court was delivered by MR. JUSTICE COTHRAN.

The defendant was tried upon an indictment charging him with the murder of Jacob Carter, at the latter's home in Bamberg County, on June 24, 1921. The trial was had at Bamberg before Hon. Robert Lide, Special Judge, at a term not stated in the record for appeal, and resulted in a verdict of manslaughter, upon which the defendant was sentenced to imprisonment for 12 years.

The evidence for the State was largely, if not wholly, circumstantial. The defendant relied upon his plea of not guilty and upon the special plea of alibi.

The setting of the homicide is as follows:

The deceased, Jacob Carter, was an old man, over 70 years of age, a widower, living with his stepdaughter, Ella Goodwin, a first cousin of the defendant. The home of the deceased was some 300 yards from that of the defendant, who had married the widow of his only son. The families visited intimately, and were, apparently, upon friendly terms until shortly before the homicide, at which time there was a disagreement as to a sum of money which Goodwin claimed was due to his wife by Carter. Goodwin was familiar with the household surroundings and with the habits of Carter. The financial disagreement appears to have en-

gendered at least unpleasant relations between Goodwin and Carter.

At some time in the afternoon of June 24, 1921, between the hours of 3 and 4 o'clock, the deceased was at his home alone; his stepdaughter, Ella Goodwin, being temporarily away from home. Two gunshots were heard in the direction of Carter's home by certain neighbors in hearing distance. The shots were some seconds apart, about long enough for a person with a single-barreled breech-loading shotgun to fire, extract the shell, insert another, and fire again. Shortly after the shots were fired a neighbor by the name of Du Bois was passing through Carter's yard upon a personal mission. He saw the body of a man lying at the wood pile, but did not go near it, possibly associating the presence of the body with the shots that had been heard, and hurried off to give the alarm. When others arrived, it was discovered that the body was that of Carter and that two loads of buckshot had been fired into his back.

It will serve no useful purpose to review the evidence in the case, which the State contends connects the defendant with the homicide. On the contrary, in the view which the Court takes of the appeal, such review may prejudice the defendant upon a second trial. It is sufficient to say that the Court has with painstaking care considered the entire evidence and have concluded that there is not such a want of evidence, connecting the defendant with the homicide, as to justify the direction of a verdict in his favor, and that the Circuit Judge committed no error in refusing the motion.

We do not deem it necessary to consider more than the following questions:

(1) Did the presiding Judge err in refusing the defendant's motion for a change of venue?

(2) Did the presiding Judge err in admitting in evidence the exclamation of Ella Goodwin when the defendant entered the home of the deceased, after the homicide, accompanied by officers?

(3) Did the presiding Judge err in admitting the testimony of the Sheriff and of the Magistrate?

The first question: The granting of a motion to change the venue is within the discretion of the Circuit Judge when exercised without legal error. The order of Judge Shipp, which will be reported, fully justifies his refusal of the motion.

The second question: Two weeks before the homicide the defendant had been arrested under a warrant issued by a neighboring Magistrate, charging him with the violation of the automobile law, operating a car without a license. His trial had been set for 2:00 p. m. on the day the homicide occurred. At the appointed time he had not appeared and the Constable was sent after him. The Constable with a friend drove up to the defendant's home and took him into custody. About that time the body of Carter had been discovered and news of the discovery reached the party at the defendant's home. The Constable suggested to Goodwin that they go by the Carter home and learn something of the trouble. The three, Goodwin being under arrest upon the automobile charge, entered the Carter home. Immediately Miss Ella Goodwin, the stepdaughter of the deceased, exclaimed: "Take him out of here! He said he was going to kill Jacob, and he has done it"—or words of similar import. Goodwin made no reply to this accusation and, at the suggestion of the officer, immediately left the room with him. This testimony was admitted over the objection of the defendant, the presiding Judge holding that the question whether or not the testimony, under the circumstances, was entitled to any consideration at all by the jury, was one for the Court; that in his opinion it was, leaving it to the jury to say what consideration they would give it. In this connection, the reporter will add the very clear exposition by the presiding Judge, in his charge, folios 251 to 258 of the "Case."

The question now for decision is whether or not the presiding Judge correctly decided, in the first instance, that the testimony under the circumstances, was of sufficient significance to justify a consideration of it from any angle by the jury. In the consideration of this issue, the rule laid down in *State v. Sudduth,* 74 S. C., 498; 54 S. E., 1013, will be applied:

"Are the circumstances surrounding the accused such as to make his silence of any significance at all? This is a question of fact to be decided by the Circuit Judge, and his conclusion will not be disturbed by this Court unless [it is] without any reasonable support."

Whether or not the evidence possessed the quality thus referred to depends upon the circumstances. Was the remark addressed to the defendant? Was he aware of his right to reply to it or the consequences of his not doing so? Did he have an opportunity to reply? Was he overwhelmed by fear, distress, or the belief that nothing he could say would avail? Under the shrieking charge of a frenzied woman, was he under a duty, not suspected or charged with the crime at the time, to answer her execration? Was he expected to do so by her, the officers, or any one present?

We do not think the circumstances warranted the admission of the testimony under the rule announced by Greenleaf and quoted in the *Suddath Case*:

"Admissions may also be implied from the acquiescence of the party. But acquiescence ,to have the effect of an admission, must exhibit some act of the mind, and amount to voluntary demeanor or conduct of the party. And whether it is acquiescence in the conduct or in the language of others, it must plainly appear that such conduct was fully known, or the language fully understood by the party, before any inference can be drawn from his passiveness or silence. The circumstances, too, must be not only such as afforded him an opportunity to act or speak, but such, * * * as

would properly and naturally call for some action or reply, from men similarly situated."

The defendant was under arrest for a misdemeanor not connected with the homicide; the interview was within a very short time of the discovery; the defendant had not been suspected; as soon as he entered the hall of the house, the woman, frantic with grief and horror, railed out her accusation and imprecation, addressed not to him but to the officers, herself as a witness putting it in stronger terms than the officers had done:

"Take the dirty rascal out of my house, and kill him and burn him! * * * He has killed my poor old father. Take him out!"

The officer testified that, when he caught what she had said, "I knew there was trouble and so I said, 'Let's go' "; that the defendant turned around, and they carried him out. An innocent man would doubtless have acted as the defendant did, and he is entitled to the presumption of innocence.

In *Lewis v. State,* 109 Miss., 586; 68 South., 785, a child of a deceased speaking directly to the defendant said: "You killed my poor father not for a thing * * *; he hadn't done a thing." It was held that his silence was not admissible as an admission of guilt. "The defendant was not called on to deny the accusation."

The admission of such evidence is strongly assimilated to the admission of a confession; in fact, it is sometimes spoken of as an implied confession. When a confession is offered as voluntary, the question of whether or not it is voluntary must be determined, in the first instance, by the presiding Judge. *State v. Danelly,* 116 S. C., 113; 107 S. E., 149; 14 A. L. R., 1420, and cases cited. If there should be a conflict of evidence upon this question and the presiding Judge is not satisfied that the confession was voluntary, he may submit the issue to the jury under instructions to disregard it if they find that it was not voluntary. 12 Cyc., 482. If the evidence is sus-

ceptible of no other conclusion than the confession was involuntary, it is error for the Circuit Judge not to exclude it, for its reception is calculated to create an impression unfavorable to the defendant. If the Circuit Judge should submit the issue to the jury and this Court should say, as a matter of law, that the confession was voluntary, the defendant will have been benefitted rather than prejudiced. *State v. Danelly, supra.*

The submission of the issue in the case at bar to the jury, whether or not the evidence was of sufficient significance to justify its consideration, does not, therefore, cure the error in not excluding it in the first instance.

The third question: The testimony of the Sheriff and that of the Magistrate as to the declarations of the deceased complaining of the conduct of the defendant and applying for a peace warrant were clearly inadmissible as hearsay.

The judgment of this Court is that the judgment of the Circuit Court be reversed, and that the case be remanded to that Court for a new trial.

MR. CHIEF JUSTICE GARY and MR. JUSTICE FRASER concur.

MESSRS. JUSTICES WATTS and MARION concur in the result.