STATE v. DAVIS

(137 S. E., 139)

1. CRIMINAL LAW—GRANTING OR REFUSING CHANGE OF VENUE IS IN JUDICIAL DISCRETION OF COURT.—Granting or refusing of motion for change of venue is in discretion of Court, but such discretion is judicial, and not arbitrary.

2. CRIMINAL LAW—MOTION FOR CHANGE OF VENUE HELD ERRONEOUSLY REFUSED ON SHOWING OF STRONG SENTIMENT AGAINST DEFENDANT.— Motion for change of venue *held* erroneously refused, in view of showing of strong sentiment against defendant in county where offense was committed.

3. HOMICIDE—DYING DECLARATION HELD ERRONEOUSLY ADMITTED UNDER EVIDENCE FAILING TO ESTABLISH DECLARANT WAS WITHOUT HOPE OF RECOVERY.—Alleged dying declaration *held* erroneously admitted, in absence of testimony establishing that declarant was without hope of recovery at time of making declaration.

Before HENRY, J., Fairfield, June, 1926. Reversed, and remanded for change of venue and a new trial.

Jim Davis was convicted of murder and he appeals.

*Mr. L. G. Southard,* for appellant, cites: *Where injury inflicted in one County and death occurs in another, defendant triable in either:* Code Crim. Pro., 1922, Sec. 111; 79 S. C., 65. *Exercise of discretion by Court must not be arbitrary, granting change of venue discretionary:* 110 S. C., 273. *Prerequisites to admission of dying declarations:* 133 S. E., 24; 103 S. C., 316; 98 S. C., 386; 93 S. C., 502; 87 S. C., 551; 80 S. C., 332; 79 S. C., 229; 79 S. C., 63; 58 S. C., 360; 56 S. C., 360; 43 S. C., 148; 43 S. C., 52; 13 S. C., 462; 9 S. C., 208. *Specific acts of violence of deceased not admissible to show reputation for violence:* 126 S. C., 300; 72 S. C., 74. *Law of defense of home:* 120 S. C., 240. *Admissibility of statements and acts of accused just prior to shooting to show mental attitude:* 129 S. C., 169; 127 S. C., 97; 113 S. E., 476; 98 S. C., 509; 89 S. C., 231; 86 S. C., 323; 75 S. C., 494; 73 S. C., 517; 73 S. C., 317; 73 S. C., 277; 43 S. C., 61; 12 Rich., 430; 62 L. R. A., 193, note; 38 L. R. A. (N. S.), 1061, note; 3 Wigmore on Ev., 2nd Ed., Sec. 1732; Wharton on Crim. Ev., 8th Ed., Secs. 30–47; 4 Elliott on Ev., Sec. 3029. *As to statements forming part of res gestae:* 76 S. C., 91; 68 S. C., 462; 68 S. C., 369; 68 S. C., 304; 68 S. C., 276; 67 S. C., 347; 47 S. C., 9; 41 S. C., 526; 13 S. C., 459. *Where killing intentional law implies malice:* 86 S. C., 17; 74 S. C., 457; 74 S. C., 477; 72 S. C., 195; 68 S. C., 304; 66 S. C., 469; 54 S. C., 240; 38 S. C., 221; 30 S. C., 74; 29 S. C., 201. *Charge of correct pricniples of law may be erroneous if inapplicable to facts:* 91 S. C., 235; 72 S. C., 194; 38 S. C., 221; 16 S. C., 153; 6 S. C., 185. *"Malice" denotes wickedness and excludes just cause or excuse:* 2 Rich., 179. *Case distinguished:* 88 S. C., 98. *Burden on State to, prove malice:* 72 S. C., 194; 38 S. C., 221; 29 S. C., 201; 15 S. C., 157; 6 S. C., 186. *Failure to charge law applicable to facts is error:* 72 S. C., 194. *Case distinguished:* 115 S. C., 248. *Any expression of opinion, actual or by im-*

*plication, from Court as to facts is error:* 122 S. E., 856; 117 S. C., 470; 95 S. E., 333; 87 S. C., 407; 84 S. C., 526; 82 S. C., 421; 81 S. C., 374; 73 S. C., 379; Const. 1895, Art. 5, Sec. 29. *Right of accused 'to act on appearances:* 101 S. E., 644. *Right of accused to defend home and dependents without retreating:* 115 S. E., 303; 113 S. C., 256; 95 S. C., 127; 85 S. C., 247; 79 S. C., 144; 43 S. C., 205; 43 S. C., 116; 40 S. C., 331; 33 S. C., 117; 25 S. C., 168; Clark on Crim. Law, 2nd Ed., 171; Bishop's New Crim. Law, 8th Ed., Sec. 858. *Defendant established. his right to defend his home and dependents with force:* 120 S. E., 240; 110 S. E., 145; 108 S. E., 93; 99 S. E., 753; 94 S. C., 461; 82 S. C., 400; 76 S. C., 124; 73 S. C., 278; 68 S. C., 137; 66 S. C., 473; 66 S. C., 452; 65 S. C., 214; 35 S. C., 290; 33 S. C., 600; 33 S. C., 595; 32 S. C., 44; 29 S. C., 236; 13 S. C., 464. *What degree of proof required to establish plea of self-defense:* 82 S. C., 488; 71 S. C., 58; 62 S. C., 130. *Taking of life in defense of home after danger passed not justifiable:* 82 S. C., 486. *Any force necessary justified in defense of home:* 131 S. E., 419; 122 S. E., 502; 120 S. E., 240; 113 S. C., 256; 79 S. C., 144; 72 S. C., 199. *Law of retreat before assailant:* 75 S. C., 510; 55 S. C., 32; 43 S. C., 127; 40 S. C., 349. *Same; where party assailed on his own premises:* 103 S. C., 321; 96 S. E., 221; 66 S. C., 469. *Invitee must be ordered to' leave premises before forcible ejectment:* 120 S. E., 240; 40 S. C., 361; Bishop's New Crim. Law, 8th Ed., Sec. 895. *Party entering premises peaceably though forbidden must' be given notice to leave:* 4 Mich., 67. *Prohibition to enter premises may be implied:* 120 S. E., 240. *Party assailed may use all force necessary to his complete defense:* 96 S. E., 543.

*Messrs. J. Lyles Glenn* and *Douglass & Douglass,* for respondent, cite: *As to change of venue:* 117 S. C., 97. *Admissibility of dying declaration:* 93 S. C., 510. *Evidence*

*of statements, etc., of accused immediately prior to shoot-ing showing mental attitude admissible:* 129 S. C., 166; 127 S. C., 98. *Case distinguished:* 126 S. C., 532. *As to de-fense of home:* 25 A. L. R., 508–563. *Use of deadly weapon in defense of home justified only in extreme case:* 142 N. C., 582; 55 S. E., 69; 9 L. R. A. (N. S.), 1148; 99 N. C., 319; 5 S. E., 17; 25 N. C., 3; 38 Am. Dec., 714.

March 3, 1927.

The opinion of the Court was delivered by MR. JUSTICE STABLER.

The defendant, Jim Davis, was tried for murder in Fair-field County and was found guilty, with recommendation to the mercy of the Court.

He now appeals to this Court, and, among other assign-ments of error, contends that the Court erred in refusing to grant his motion for a change of venue.

By his verified petition he set forth the grounds upon which such motion was based, to wit, that the homicide was followed by intense excitment in Fairfield County; that for several days thereafter he was hunted by bands of armed men, intense feeling being manifested against him, and that members of these bands threatened him with death on sight; that the deceased was very popular, and a man of standing and importance in the County, being a member of a large and influential family, the members of which were working to influence sentiment for defendant's conviction; that, following the homicide, the Governor of South Caro-lina, being fearful of violence to him, ordered that he be held in the State penitentiary for safe-keeping until a few days before the date set for his trial; and that, although the attorneys at law practicing at Winnsboro were canvassed, and their services sought in his defense, and although he was in position to pay them a fee for their services, still he was unable to procure counsel in Winnsboro to represent him or aid him in the preparation of his case, in selecting

35—S. C.—138

a jury, and otherwise, the reason being that "they were fearful on account of the Scott family and its relations being so large and numerous, and with their tremendous influence in Fairfield County, and on account of the terrible prejudice existing against petitioner that their law practice in Fairfield County would be practically ruined, and that they would hereafter suffer irreparable injury on account of the same."

The defendant's petition was supported, in part, by the affidavit of his attorney, Mr. Southard, who stated that, as counsel for the defendant, he could not obtain assistance of local counsel even for checking up the jury list, and that the reasons given for the attorney's refusal to aid him in any way were the number and far-reaching influence of the relatives of the deceased; and that he, Mr. Southard, is a total stranger in Fairfield County.

By its return the State did not attempt to controvert the statement of facts alleged in this petition, but offered affidavits of six citizens of Fairfield County to the effect that, although sentiment had been strong against the defendant, it had subsided, and that "in their judgment they thought that the defendant could obtain a fair and impartial trial in Fairfield County."

It is true, as stated in *State v. Jackson*, 110 S. C., 273; 96 S.E., 416, "the granting or refusing of motion for change of venue is in the discretion of the Court. But it is a judicial, and not an arbitrary, discretion." The alleged facts set forth in the petiton were indicative of an atmosphere in Fairfield County strongly prejudicial to the defendant. These facts were not disputed. In fact, the State admitted that there has been strong sentiment against the defendant, and the citizens who made the State's affidavits would only say that "in their judgment they thought" the defendant could get a fair trial in Fairfield County. It appears also that the Governor had rea-

sons for thinking that the defendant would be unsafe in the Winnsboro jail, and so detained him in the penitentiary practically up to the time of trial. That the defendant could not get paid local counsel at Winnsboro to represent him strongly indicates the State of feeling in Fairfield County against him. Defendant's moving papers ascribed their refusal to represent him to their fear of the power and influence in Fairfield County of the family of the deceased, which was not controverted by the return for the State.

Under all the circumstances it appears to us that, in the interest of justice, and in order that the defendant might be tried in an atmosphere free from prejudice, the motion for a change of venue should have been granted.

Under this view of the case it becomes unnecessary to consider the other question of assigned error. However, we desire to refer to the matter of the admission of the alleged dying declaration.

In *State v. Johnson,* 26 S. C., 152; 1 S. E., 510, the rules in regard to the admission of dying declarations are thus stated:

"(1) That death must be imminent at the time the declarations in question are made. (2) That the declarant must be so fully aware of this as to be without any hope of life. *State v. Quick,* 15 Rich., 349. *State v. MeEvoy,* 9 S. C., 212. *State v. Gill,* 14 S. C., 413. And (3) That the 'subject of the charge' must be the death of the declarant, and the circumstances of the death must be the subject of the declarations. *State v. Terrell,* 12 Rich., 321, and the authorities there cited."

In *State v. Lee,* 58 S. C., 335; 36 S. E., 706, this Court quotes with approval the following from 10 Am. & Eng. Ency. of Law (2nd Ed), 364–367:

" 'In order that the dying declarations of a deceased person may be admissible, under the dying declarations rule, the declarant must, at the time of making them, have been

*in extremis,* and fully conscious of his impending dissolution. Both of these conditions must exist. Thus it has been said, that it is not alone sufficient that the declarant believe that he *is about to die; to be* admissible under the dying declarations rule, his dying declarations must have been made while he was *in extremis.* And even though the declarant was *in extremis,* his declarations are not admissible, unless they were made by him while he was under a sense of impending death. To render his declarations admissible, the declarant must not only believe that he is about to die, but must be without hope or expectation of recovery.' * * * 'According to the clear preponderance of authority, if the deceased had the slightest hope of recovery, when the declarations were made, they are inadmissible.' "

It does not appear from the testimony of Dr. Wallick, the one witness who testified as to the alleged dying declaration, that the declarant was without hope of recovery. Dr. Wallick testified that the defendant, while being taken from his home, after the shooting, to the hospital at Columbia, said: "I don't believe I am going to make it." Exactly what he meant by the words is not known, but Dr. Wallick, surmising that he meant that he did not believe he would get well, encouraged him to think that he would recover—with what success is not shown. However, it does not appear from the language used that he had abandoned all hope of recovery. While he was uneasy and anxious about his condition, he had not given up all hope of life, and in this respect the test was not met. And we may add that it does not appear from the testimony of Dr. Wallick, with certainty, whether the alleged declaration was made before or after declarant had stated, "I don't believe I am going to make it." As presented, this testimony should not have been admitted, and the Court erred in its admission.

The judgment of the Circuit Court is reversed, and the case remanded for change of venue and a new trial.

Mr. Chief Justice Watts and Messrs. Justices Cothran and Blease and Mr. Acting Associate Justice Purdy concur.