15354

STATE v. THOMAS

(18 S. E. (2d), 369)

*Mr. Joseph Murray,* of Columbia, for appellant,

*Mr. J. Reuben Long, Solicitor,* for respondent,

January 13, 1942.

The opinion of the Court was delivered by MR. ASSOCIATE JUSTICE FISHBURNE.

The defendant, George Thomas, was convicted of rape by a jury in the Court of General Sessions for Georgetown County. Judgment of death by electrocution was pronounced upon him by the Court, and from that judgment he prosecutes this appeal.

The crime was committed about ten o'clock on the night of December 14, 1940, in the city of Georgetown. Appellant is a Negro man, and the prosecutrix is a young married white woman. He was arrested on the day after the commission of the alleged offense and taken by the sheriff of Georgetown County to the State Penitentiary in Columbia for safe-keeping.

The first question presented is the action of the trial Court in overruling the defendant's motion for a change of venue, which motion is based upon the verified petition of the appellant, with a supporting affidavit by Mr. Joseph Murray, his attorney, in which it is set forth that the defendant could not obtain a fair and impartial trial in Georgetown County.

Defendant alleges that on the day after he was taken to Columbia a mob of approximately 300 citizens of Georgetown County gathered at the county jail and demanded of the sheriff that he give them a key to the jail so that it could be searched-for the defendant; that the whole county of Georgetown is permeated with a spirit of hostility against the defendant; that the charge against him has been frequently and publicly discussed by the citizens throughout the county, who have become so fixed in their belief that the defendant is guilty of the crime he stands charged with that he cannot obtain a trial before a fair and impartial jury in Georgetown County.

Mr. Murray, the defendant's attorney, is a native of South Carolina, and resides in Columbia, where he maintains his law office. His affidavit shows that he went to the city of Georgetown on January 26, 1941, which was the day before the trial of the defendant was begun, for the purpose of representing him; that he talked with a number of citizens of the county with reference to the defendant's case, and every one with whom he talked expressed the belief that the defendant could not obtain a fair and impartial trial in Georgetown County; that on the night before the trial he was told by a State highway patrolman in Georgetown that threats had been made against the life of deponent by reason of the fact that he represented the defendant. Mr. Murray stated in his affidavit that he was apprehensive that his life would be taken, or that he would suffer serious bodily harm after the trial of the case should he be forced to defend the defendant in Georgetown County; and that he felt satisfied that George Thomas, the appellant, could not obtain a fair

and impartial trial in the county where the alleged crime was committed.

Mr. Murray further stated in his affidavit that although he had endeavored to obtain the assistance of local counsel in Georgetown County to aid him in the selection of a jury, and to join with him in making an affidavit to the effect that the defendant could not obtain a fair trial in Georgetown County, he had failed to do so; that the local attorney he interviewed refused to be associated in the case on account of the feeling and the public sentiment against the defendant; and that such attorney advised Mr. Murray that a fair and impartial trial could not be had in the county of Georgetown.

The motion for a change of venue was made on Monday, the opening day of the Court, without previous notice to the solicitor. Thereupon witnesses were offered by the State in opposition to the motion; they were sworn, and testified in open Court. Among these witnesses was Mr. Gold, the coroner of the county, who was also a practicing attorney. In addition to the testimony of Mr. Gold, at least five attorneys, members of the Georgetown bar who happened to be in the Court room, testified that they had not been consulted relative to being employed to represent the defendant,—that they had not been approached by Mr. Murray or by anyone else. Not one of them said that he would have refused such employment if properly compensated, and each one who was asked the question stated that if appointed by the Court to represent the defendant he would do so to the best of his ability.

All of these lawyers, together with Mr. L. H. Wallace, a newspaper reporter, testified that there had been strong public sentiment against the defendant in Georgetown County at the time the crime was committed, six weeks before, but that this feeling had all but subsided, and that in their opinion no reason existed why the defendant could not get a fair and impartial trial. In the course of his examination, Mr. Wallace said: "Well, this is one of the quietest Court terms I have seen here in a few years, and I have been practically to all of them."

Mr. Cebrun Moss, a Governor's officer, also testified on the issue as to whether or not the defendant could obtain a fair trial in Georgetown County; he and other officers had been detailed to Georgetown to attend the trial of the defendant. He stated that after visiting drug stores, hotels, and walking around the streets investigating the local situation, he reported to the sheriff that he had heard nothing in the way of threats, or any talk or discussion among the people which indicated any sentiment or feeling which would prevent the defendant from obtaining a fair and impartial trial in Georgetown County.

It appears from the record that the local National Guard Company had been called out by the Federal Government for the purpose of induction into service, and was stationed several blocks from the Court house, but there was no evidence that their presence had any connection, direct or indirect, with the trial of this case.

At the conclusion of the trial, in passing upon a motion for a new trial for the defendant, the trial Judge stated that there was not discernible in or about the Court room, the slightest display of public sentiment against the defendant or his attorney; that the trial itself was conducted in a quiet and orderly way, and that there were only such officers seen in and around the Court house as were actually necessary to carry on the normal business of the Court. The trial Judge made the further statement that there appeared to be little public interest in this case, as only a few people were in attendance upon the trial.

In the order of the Circuit Judge settling the case on appeal, he made this additional statement:

"The jurors were placed on their *voir dire*, and only three of the qualified jurors, out of the entire venire, one of which sat on the case, had ever heard of the case before, which fact further convinced the Court that public feeling in Georgetown County was not unduly excited by the crime committed.

"Following this case was *The State v. Isaac Gibson,* a Negro, charged with rape on a young white woman in Georgetown County about the same time, a few blocks from this scene, under very similar circumstances to the instant case, and which in the Court's opinion was a very heinous crime, according to the testimony, and the jury in that case recommended the defendant to the mercy of the Court, which further convinced the Court that these sex cases tried at that term of the Court did not arouse undue public feeling against these defendants, and there was no reason that they both could not, and did not receive fair trials."

Where an application is made, by one accused of crime for a change of venue on the ground that an impartial jury cannot be obtained, the law devolves on the trial Judge the duty and responsibility of making an examination and informing himself of the truth of the averments in the application; and where, after hearing evidence, the trial Court is satisfied that a fair and impartial jury may be had in the county where the crime is alleged to have been committed, this Court will not reverse his judgment refusing to change the venue, unless it is made to appear that there has been an abuse of discretion. *State v. Goodwin,* 127 S. C., 107, 120 S. E., 496; *State v. Davis,* 138 S. C., 532, 137 S. E., 139.

The right of a prisoner to have a change of venue depends upon the conditions existing at the time of the trial. The record here discloses no manifestation of public feeling or spirit of violence against the defendant at the time he was tried; nor do we find anything in the case from which the inference could reasonably be drawn that the defendant could not obtain local counsel from the Georgetown bar.

The only case cited in the brief for the appellant is that of *State v. Davis,* 138 S. C., 532, 137 S. E., 139. In the *Davis case* the refusal to grant the change of venue requested was held to be error by this Court. It was shown that the homicide charged against the defendant was followed by

intense excitement; that for several days the defendant was hunted by bands of armed men; that the deceased was a man of standing in the county, and very popular, being a member of a large and influential family, the members of which were working to influence sentiment for defendant's conviction; and that although the attorneys at law practicing at Winnsboro were canvassed and their services sought in his defense, and although he was in position to pay them a fee for their services, still he was unable to procure counsel in Winnsboro to represent him or aid in the preparation of his case for trial.

The situation in the *Davis case* is in a great many respects far different from the situation in the case at bar,—so different, as already pointed out, that it is not controlling.

While there is no showing in this case that any great number of Court officials or Governor's officers were conspicuous by their presence at any one time in the Court room, the following quotation from *State v. Francis,* 152 S. C., 17, 149 S. E., 348, 352, 70 A. L. R., 1133, is pertinent: "It is not always to be held, however, that the presence of militia or an armed guard in the trial of a criminal case is in itself sufficient evidence that the accused person did not receive, and could not receive, a fair and impartial trial. On the contrary, there may be instances in which a military guard would help to insure a fair trial to one charged with crime. In the *Kenny case* (*State v. Kenny,* 77 S. C., 236, 57 S. E., 859), this Court upheld the action of the lower Court in having an armed guard to prevent the escape of the defendant. The Court can conceive of instances where no proper protection is afforded, that honest and intelligent jurors might, because of fear of mob violence to the accused or themselves, or to other persons connected with the Court, render a verdict of guilty, even when they thought the accused was innocent; on the other hand, knowing that the accused, jurors, witnesses, and others would be properly protected by an armed force, would not hesitate to acquit the accused."

■ Appellant contends that the testimony of the jurors on their *voir dire* should have been excluded from the record on appeal. We do not think it was error to order the inclusion of this testimony. The question before the Court is whether or not the defendant did obtain a fair and impartial trial, and the testimony of these jurors, who were drawn from various sections of the county, throws considerable light upon the situation. In fact, upon the request of the appellant's attorney we have looked into the entire record to obtain a full background of this case. We can, however, find nothing which in our opinion shows legal error on the part of the Court in refusing to grant the change of venue.

Judgment affirmed.

MR. CHIEF JUSTICE BONHAM, MESSRS. ASSOCIATE JUSTICES BAKER and STUKES, and MR. ACTING ASSOCIATE JUSTICE G. DEWEY OXNER concur.