18575

The STATE, Respondent, v. Frank CANNON, Appellant
(151 S. E. (2d) 752)

*Messrs. Rembert D. Parler* and *James R. Turner,* of Spartanburg, *for Appellant,*

508

*Messrs. John H. Nolen, Solicitor,* and *Milton A. Smith, Assistant Solictor,* of Spartanburg, *for Respondent,*

November 16, 1966.

BUSSEY, Justice.

The defendant appellant, Frank Cannon, was convicted of rape and sentenced to death at the June 1965 term of the Court of General Sessions for Spartanburg County. Prior to his trial, motions for a continuance and for a change of venue were denied. The crime, with which Cannon is charged, was committted on the night of December 17, 1964. The prosecutrix was a fourteen year old white girl who was engaged as a babysitter at the home of Mr. and Mrs. Carlisle in the City of Spartanburg. At about 7:45 o'clock P. M. her attacker entered through the rear door of the Carlisle residence, beat her into unconsciousness, stripped much of her clothing from her, and placed her in a stolen automobile which was driven to an area, some two or three miles distant, where the prosecutrix was criminally assaulted. According to the testimony of the prosecutrix, at the time she was raped she was unconscious, and it would appear that she remained more or less so during most of the time, until she made her escape from her attacker somewhere near 11 o'clock that night. The medical evidence leaves no doubt that she was raped.

Upon the discovery of the absence of the prosecutrix, at about 9 o'clock on the night of the attack, an alarm was given but the efforts of many law enforcement officers were unsuccessful in apprehending the attacker that night. The sequence

of events in which the prosecutrix and her attacker were involved, as well as the search for the attacker, extended over a considerable area, all within Spartanburg County. In the course of the search, a number of articles belonging to the attacker were recovered, including his hat, a pair of gloves, a jacket, a watch, and one shoe.

On Sunday, December 20, 1964, at approximately 1:30 P. M., a number of police officers of the City and County of Spartanburg went to the home of the appellant Cannon, armed with what purported to be a search warrant, at which time the appellant was taken into police custody, the dwelling was searched and certain articles were seized by the officers. The appellant and the seized articles were then taken to the Spartanburg County jail where the appellant was restrained and interrogated, oral and written confessions from the appellant being obtained by the officers that afternoon.

In the late afternoon or early evening of the same day the appellant was taken by police officers from the jail for the purpose of having him retrace his movements on the night of December 17, after which he was returned to the jail. At sometime around 8:30 o'clock P. M., December 20th, the appellant was taken before a magistrate and an arrest warrant was obtained.

The articles taken from the home of the appellant by virtue of the purported search warrant consisted of a shoe box, the serial number of which corresponded with the shoe already in the possession of the officers; a receipt given the appellant upon the purchase of the shoes, and a wrist watch band which allegedly belonged to the watch already in possession of the police. The purported search warrant used by the officers in the search of appellant's home was ruled invalid by the trial judge, and the articles taken from the home of the appellant were excluded from evidence upon the trial of the case, in accord with the decision of the United States Supreme Court in *Mapp v. Ohio*, 367 U. S. 643, 81 S. Ct. 1684, 6 L. Ed. (2d) 1081, 84 A. L. R. (2d) 933.

On January 6, 1965 the court appointed two very capable members of the Spartanburg Bar to represent the appellant, and since their appointment they have most diligently represented him, not only in the court below but in the pursuit of his appeal. In addition, since this is a capital case, under our well established rule, *in favorem vitae,* it is our duty to examine the entire record to determine whether there were any prejudicial errors affecting any substantial rights of the appellant. An examination of the record indicates that appointed counsel have carefully raised and preserved every point which could have resulted, even arguably, in prejudice to the appellant.

Several questions are presented arising out of the confession of the appellant. Before the said confession was offered in evidence by the State and ruled admissible by the trial judge, the jury was excluded and the trial judge heard rather detailed evidence from the State and the appellant as to the circumstances attendant upon and surrounding the confession. The following language is taken from the statement of the case:

"Over objections of defense counsel the presiding judge held that the State had made out a *prima facie* showing that the confession was admissible, and it was admitted in evidence under instructions that it, the jury, was to make the ultimate determination of whether or not the confession was voluntary."

The appellant contends first that the action of the trial judge did not accord him a fair hearing and a reliable determination of the voluntariness of his confession in accordance with the holding of the United States Supreme Court in *Jackson v. Denno,* 378 U. S. 368, 84 S. Ct. 1774, 12 L. Ed. (2d) 908, 1 A. L. R. 3rd 1205. Secondly, he contends that the trial judge should have excluded the confession, as a matter of law, (a) under the totality of the circumstances surrounding the giving of the same; (b) because it was the result or fruit of an unlawful search and seizure; and (c) that it should have been excluded by virtue of the reasons

underlying *Miranda v. State of Arizona*, 384 U. S. 436, 86 S. Ct. 1602, 16 L. Ed. (2d) 694.

Disposition of the last stated contentions would ordinarily require a full discussion of all of the evidence adduced before the trial judge. In view, however, of the disposition which we hereinafter make of the first stated contention of the appellant, we deem it inadvisable to discuss the evidence in detail.

After having carefully reviewed all of the evidence and considered all of the authorities cited by the appellant, we conclude that there are factual conflicts arising out of the evidence which must be resolved before it can be determined whether the confession was lawfully admissible in evidence.

Much of the evidence on the part of the State tending to prove the confession of the appellant volutary is uncontradicted, but there are conflicts in the evidence. There was a particulary sharp conflict as to whether the articles taken from the home of the appellant by virtue of an invalid search warrant were in the interrogation room, and whether or not the same were used to induce the confession. If, in fact, the confession was the product of an illegal search and seizure, it would appear to follow that under the rationale of *Mapp v. Ohio,* supra, *Wong Sun v. United States*, 371 U. S. 471, 83 S. Ct. 407, 9 L. Ed. (2d) 441, and *Fahy v. State of Conn.*, 375 U. S. 85, 84 S. Ct. 229, 11 L. Ed. (2d) 171, such confession would be inadmissible in evidence.

Under the *Jackson v. Denno* decision, *supra,* which is, of course, binding upon us, the appellant was entitled to a reliable determination, as to the voluntariness of his confession, by a tribunal other than the jury charged with deciding his guilt or innocence. That decision has left to the states the decision as to what this other tribunal may be. Once a separate reliable determination has been made that a confession is in fact voluntary, it is still permissible and proper under the *Jackson* decision, as we understand it, to follow the traditional rule and practice in this state of submitting the issue of voluntariness to the

jury, charged with deciding guilt or innocence, and instructing it to disregard the confession if it, in fact, finds such to be involuntary.

In fairness to the trial judge it should be pointed out that the *Jackson* decision was not called to his attention during the course of the trial. We think it clear, however, that he did not make any actual determination as to the voluntariness of the confession and, instead, followed the rule long prevailing in this jurisdiction and succinctly stated in *State v. Chasteen,* 228 S. C. 88, 88 S. E. (2d) 880, 884, as follows:

"The question of whether a confession is voluntary is one which is addressed to the Court in the first instance. If there is an issue of fact as to the voluntariness of a confession, it should be admitted and the jury, under proper instructions, allowed to make the ultimate determination as to its voluntary character and also its truthfulness. *State v. Scott, supra,* 209 S. C. 61, 38 S. E. (2d) 902; *State v. Brown, supra,* 212 S. C. 237, 47 S. E. (2d) 521; *State v. Livingston, supra,* 223 S. C. 1, 73 S. E. (2d) 850."

There is nothing in the record to indicate that the trial judge even attempted to make any determination of the factual issues arising out of the conflicting evidence.

Since the appellant has not had a reliable determination of the issue of voluntariness, to which he is entitled under the *Jackson v. Denno* decision, he must be accorded the same. In the *Jackson* case, which arose out of a Federal *habeas corpus* proceeding in New York, the State of New York was not required to give Jackson a new trial in the absence of a determination by the State of New York, in a proper hearing, that the confession was in fact involuntary. We agree with what the United States Supreme Court said in that case to the effect that it would have been practical and desirable had a proper determination of voluntariness been made prior to the admission of the confession, in evidence, in the instant case. We do not think,

however, that the Constitution or the *Jackson* decision require a new trial, if, in a soundly conducted collateral proceeding, the appellant's confession here is determined to be voluntary. If, in fact, the confession be voluntary, appellant has suffered no actual prejudice as a result of a determination not having been made prior to the submission to the jury of the question of his guilt or innocence.

The case is, accordingly, remanded to the General Sessions Court of Spartanburg County for the purpose of holding a hearing addressed to the determination of whether or not appellant's confession was voluntary or involuntary, in the course of which hearing all evidentiary conflicts should be resolved. Since the trial judge is the resident judge of that circuit and there is no question as to his jurisdiction, the hearing should preferably be held by him, but, should he for any reason be unavilable, the hearing may be held before any judge having jurisdiction in that circuit. In addition to the evidence contained in the record bearing on the voluntariness or involuntariness of the confession, both the State and the appellant shall have the right at such hearing to introduce any relevant additional evidence. Should it be determined upon such hearing that the confession of the appellant was involuntary, it will, of course, follow as a matter of course that he is entitled to a new trial.

It is contended that it was error to admit evidence to the effect that appellant retraced his alleged movements on the night of the crime, in the company of law officers, after his confession was obtained. Appellant's contention in this respect is grounded on the proposition that the confession was in fact involuntary. If the confession was voluntary, there was no error in the admission of this evidence. Of course, should it be determined that the confession was involuntary and a new trial had, a different situation will be presented. Under such circumstances, not only the involuntary confession but acts or statements on the

part of the appellant, which are in effect a part and parcel of the confession, should be excluded.

The appellant contends that the trial court erred in refusing to grant a motion for change of venue from Spartanburg County. Such motion was predicated on the contention that due to adverse and prejudicial publicity through the news media of Spartanburg County appellant could not obtain a trial in that county that would afford an impartial jury. After hearing an abundance of testimony, the trial judge denied the motion.

In support of appellant's motion, counsel presented, in addition to the affidavit of counsel, seventeen affidavits from individuals to the effect that they thought appellant could not obtain a fair trial in Spartanburg County. They presented evidence to the effect that the news media, including newspapers, radio and TV, had, shortly after the arrest of the appellant, given considerable publicity to the fact that appellant had made a statement, his prior criminal record of larceny and assault and battery, and the evidence obtained by virtue of the invalid search warrant. It was also shown that further publicity was given to some, if not all, of the foregoing factors following the preliminary hearing on April 9, 1965, approximately sixty days prior to the trial. While other publicity was given to the case, appellant's motion was basically predicated on the foregoing.

In opposition, the State offered some nine hundred twenty-five affidavits from individuals to the effect that a fair and impartial trial could be had in Spartanburg County, and produced a number of witnesses who testified to the same effect.

At the trial, all prospective jurors were examined on their *voir dire,* and, of thirty-six prospective jurors drawn in the selection of the jury, only three stated that they had any bias or prejudice whatsoever, or that they had formed or expressed an opinion, and these three were excused by the court. Appellant did not challenge any juror for cause

and did not use three of the peremptory challenges to which he was entitled. In drawing two alternate jurors, only five names were drawn. Only one of these, on *voir dire,* disclosed any bias, he being excused by the court. Again, appellant did not use, in the selection of the alternate jurors, three preemptory challenges to which he was entitled and objected to no juror for cause.

It is not shown or contended that there was any undue or prejudicial publicity at the time of the trial of the case. Moreover, the record shows that the jury was isolated and protected from any publicity which occurred at that time. There is an absence of anything in the record to indicate that there was any substantial interest in the trial on the part of the public, or that any prejudicial atmosphere prevailed in or about the court house as a result of the antecedent publicity of which the appellant complains, or otherwise.

We quote the following from *State v. Moorer,* 241 S. C. 487, 129 S. E. (2d) 330:

"A motion for change of venue is addressed to the judicial discretion of the trial Judge and this Court will not reverse the trial Judge's disposition of such motion in the absence of a clear and conclusive showing of abuse of discretion. *State v. Britt,* 235 S. C. 395, 111 S. E. (2d) 669; *State v. Livingston,* 233 S. C. 400, 105 S. E. (2d) 73; *State v. Mouzon,* 231 S. C. 655, 99 S. E. (2d) 672; *State v. Davis,* 138 S. C. 532, 137 S. E. 139; *State v. Goodwin,* 127 S. C. 107, 120 S. E. 496; *State v. Jackson,* 110 S. C. 273, 96 S. E. 416.

" 'Where an application is made, by one accused of crime for a change of venue on the ground that an impartial jury cannot be obtained, the law devolves on the trial judge the duty and responsibility of making an examination and informing himself of the truth of the averments in the application; and where, after hearing evidence, the trial court is satisfied that a fair and impartial jury may be had in the county where the crime is alleged to have been com-

mitted, this court will not reverse his judgment refusing to change the venue, unless it is made to appear that there has been an abuse of discretion.' *State v. Thomas*, 198 S. C. 519, 18 S. E. (2d) 369."

While we deplore and condemn the publication by ■ news media, in advance of a criminal trial, of evidentiary facts, which are clearly inadmissible or likely to be held inadmissible, we cannot say on the record before us that there was an abuse of discretion on the part of the trial judge in denying a motion for change of venue in the instant case. The *voir dire* examination ordinarily throws light on the question of whether or not an impartial jury may be obtained, *State v. Thomas*, 198 S. C. 519, 18 S. E. (2d) 369; and whether the trial judge has abused his discretion in denying a change of venue motion. See also, *state v. Mouzon*, 231 S. C. 655, 99 S. E. (2d) 672. In *State v. Bikle*, 180 S. C. 400, 185 S. E. 753, it was stated,

"It is significant, in considering whether reversible error was committed, amounting to abuse of discretion, to note what importance defendant himself attached to the motion, and whether subsequent events corroborated or refuted this ruling."

Here the subsequent events reflected by the record fully corroborate, rather than refute, the ruling of the circuit judge in denying the motion for a change of venue. Appellant strongly relies on the case of *Irvin v. Dowd*, 366 U. S. 717, 81 S. Ct. 1639, 6 L. Ed. (2d) 751, and *Rideau v. State of Louisiana*, 373 U. S. 723, 83 S. Ct. 1417, 10 L. Ed. (2d) 663, wherein the United States Supreme Court voided trials because of prejudicial publicity. Suffice it to say, that the factual situations in those two cases are clearly distinguishable from the factual situation in the instant case. A decision of the United States Supreme Court more nearly in point with the instant case is that of *Beck v. Washington*, 369 U. S. 541, 82 S. Ct. 955, 8 L. Ed. (2d) 98, such decision being adverse to the contention of the appellant here.

The remaining question is whether or not the trial ■ judge committed an abuse of discretion in denying appellant's motion for a continuance. It is too well settled in this jurisdiction to require the citation of authority that a motion for continuance is addressed to the sound discretion of the court, and that the decision of the trial court thereabout will not be disturbed on appeal in the absence of an abuse of discretion amounting to an error of law. In the instant case the motion for continuance was based on the unsuccessful efforts of counsel for appellant to arrange a psychiatric examination of the appellant by Dr. Norton L. Williams, a psychiatrist of Charleston, South Carolina, which city is something more than two hundred miles distant from Spartanburg. The appellant was examined at the South Carolina State Hospital under an order of court and found to be sane, such examination having been concluded on or about March 12, 1965. While the appellant was found to be sane, the examination at the State Hospital reflected that he had an IQ of 74, and a mental age of eleven years and four months. Lay testimony adduced upon the trial was to the effect that appellant was of perfectly normal or possibly above normal mentality.

Counsel for appellant sought to have a psychiatric examination of the appellant by an independent psychiatrist. Precisely how many psychiatrists there are in South Carolina does not appear from the record, but it does appear that there are two in Spartanburg and two in nearby Greenville. The affidavit of counsel reflects that counsel encountered some reluctance on the part of one or more doctors in the Spartanburg area to undertake the examination. Precisely who was contacted or what difficulties were encountered is not shown. The record does reflect that on April 12, 1965, counsel contacted Dr. Williams who responded that he would undertake the examination on either of several suggested dates during the month of May, 1965, and stated that if those dates were not suitable, he would try to arrange to have one of his colleagues in Charleston to assist counsel

in the matter. Due to lack of funds, counsel did not make an immediate engagement with Dr. Williams, but, on May 11, 1965, obtained an order from the court providing certain funds to pay the expenses of a psychiatrist or other medical examiner from Charleston. Following such, counsel then attempted to secure the examination by Dr. Williams on May 22nd or 23rd, dates originally stated by Dr. Williams to be suitable. Dr. Williams thereafter advised that for personal reasons he could not undertake the examination until June 20, 1965, which date was subsequent to the trial of the case. Precisely when counsel was advised that Dr. Williams would not be available until June 20th does not appear, and it is not shown that following such advice counsel sought to thereafter obtain an independent examination by any psychiatrist other than Dr. Williams.

From the foregoing, it appears that Dr. Williams was not in fact a witness but was, at most, a possible or prospective witness who might or might not be used as such, dependent upon an examinaton proposed to be performed at some time in the future, not earlier than June 20, 1965.

In 17 Am. Jur. (2d) 149, Continuances, Sec. 29, it is stated as a general rule that a defendant is not entitled to a continuance on the ground that additional time might enable him to turn up more evidence or persons willing to testify in his behalf, and that the refusal of a continuance is not an abuse of judicial discretion where the application fails to show the competency and materiality of the expected evidence, its credibility and likelihood of affecting the trial's outcome, and that such testimony is presently unavailable from other sources. In the instant case there is, of course, no showing that any evidence favorable to the appellant would be adduced had the court ordered a continuance for the purpose of allowing the appellant to be examined by Dr. Williams, and we think no sufficient showing that such evidence, as might have been obtained through an examination by Dr. Williams, could not have been obtained through an examination by some other psychiatrist.

Under the circumstanes reflected by the record, we cannot say that there was any abuse of discretion on the part of the trial judge in denying the motion for a continuance.

In conclusion, we observe no error in the record prejudicial to the appellant, other than the failure of the trial judge to accord him a reliable determination of the issue of the voluntariness of his confession, as hereinabove set forth. On that ground, however, the cause is remanded to the lower court for further proceeding in accordance with this opinion. Should it be determined that appellant's confession was involuntary, a new trial shall, of course, be ordered. Since, pending the appeal herein, the date on which the sentence of the lower court would have been carried out has now passed, should it be determined that his confession was voluntary and, therefore, properly admitted in evidence before the jury, it will follow that the appellant will have to be resentenced by the lower court in accordance with the provisions of Secs. 55-371 *et seq.* of the 1962 Code of Laws.

Remanded

Moss, C. J., LEWIS and BRAILSFORD, JJ., and LIONEL K. LEGGE, Acting Associate Justice, concur.